[Civ. No. 14477. First Dist., Div. One. June 14, 1951.]

ELENA ZELAYETA et al., Respondents, v. PACIFIC GREYHOUND LINES, INC. (a Corporation) et al., Appellants.

Bronson, Bronson & McKinnon and Dana, Bledsoe & Smith for Appellants.

Fitz-Gerald Ames, Sr., and Richard M. Siegel for Respondents.

PETERS, P. J.—On the rainy afternoon of November 24, 1945, Lawrence Zelayeta was driving his automobile along the Bayshore Highway south of San Francisco when it collided with a bus owned by defendant and appellant Pacific Greyhound Lines, Inc., and then being operated by Wallace Albritton, also a defendant and appellant. Lawrence Zelayeta was killed. Elena Zelayeta, his wife, and the couple's two children, brought this action for the wrongful death of Lawrence. After a hard-fought lengthy trial the jury brought in a verdict of $75,000, and from the judgment entered on this verdict Pacific Greyhound and Albritton appeal.

Appellants do not challenge the sufficiency of the evidence, nor do they challenge the amount of the judgment. They do contend, however, that this was a very close case on the issues of negligence and contributory negligence, and for that reason they urge that any substantial error undoubtedly was prejudicial.

Three points are urged for a reversal:

1. That the trial court erred in admitting opinion evidence

as to the point of impact; that is, as to which of the two vehicles first crossed the center line of the highway. Appellants feel that this issue as to the point of impact was the ultimate and basic issue in the case, and that the admission of opinion evidence on this vital issue was not only error but necessarily prejudicial error;

2. That the trial court erred in failing to give a requested instruction to the effect that the compromise by appellants of other claims arising out of this accident was not an admission of liability;

3. That the trial court erred in refusing to receive into evidence a claimed admission made by plaintiffs' counsel in an affidavit.

### The Basic Facts

Lawrence Zelayeta was employed in South San Francisco. At about 4:20 p.m. on November 24, 1945, he left his place of employment and started towards San Francisco on Bayshore Highway with O'Brien, a fellow employee, as a passenger. His car was in good operating condition and was equipped with good tires and brakes. It was raining, and the windshield wipers were operating. O'Brien testified that, after leaving Brisbane, Lawrence was driving on the inside fast lane of the highway at a speed of about 30 to 40 miles per hour. Just north of Brisbane, a little over three miles from South San Francisco, is a long hill. While proceeding up this hill Zelayeta's car collided with a Greyhound bus travelling south down the hill. The accident happened between 4:20 and 4:35 p.m.

The bus involved in the accident left Seventh and Mission Streets in San Francisco at 4 p.m. Its schedule called for a running time of 15 minutes to Brisbane and 20 minutes to South San Francisco. Admittedly, at the time of the accident, it was 10 to 15 minutes behind schedule. It was equipped with a governor set at 57 miles per hour in high gear, and 35 miles per hour in third gear. Estimates of its speed just prior to the accident vary from 25 to 60 miles per hour. Just prior to the collision it was travelling in the fast inside southbound lane of the highway, downhill, with its windshield wipers operating. Traffic was heavy. The bus was 8 feet in width, which would give a one-foot clearance on either side of the bus within the lane in which it was travelling.

The inspection report for this bus indicates that it was examined before it started on its trip and found to be in

good mechanical condition. There is some conflict in the evidence as to the condition of its tires. The tires were owned by Firestone Tire & Rubber Company, leased to Greyhound, and serviced at Greyhound terminals by Firestone employees. One of these employees testified that all of the tires on the bus had good treads, except the right rear, inside tire, which was smooth. Another witness, who saw the two cars immediately after the accident, testified that both rear tires on one side were smooth. Officer Edwards, a traffic policeman, examined the tires on both cars. Those on Zelayeta's car were practically new. The dual tires on one side of the bus both ''were very smooth,'' while the other two rear tires ''were getting pretty well down.''

The portion of the Bayshore Highway here involved is a four-lane highway, with double white lines separating the north and southbound lanes, and the north and southbound lanes being, in turn, divided, by single white lines, into two lanes each. There is an asphalt shoulder on each side of the highway, and a guardrail outside each shoulder. Beyond the east guardrail is an embankment. Just before the highway goes over the top of the hill towards San Francisco it curves to the right. There has been skidding on that curve in the past.

Albritton, the driver of the bus, testified that at the time of the collision he was in the inner, fast, southbound lane. His story was that Zelayeta skidded toward the bus, and that, in an attempt to avoid the collision, he, Albritton, turned the bus to the left. The evidence is in hopeless conflict as to whether the bus turned or skidded into Zelayeta's car, or whether Zelayeta turned or skidded into the bus, as to the point of impact, that is, whether in the north or southbound lane, and whether the driver of the bus did or did not slam on his brakes just prior to the accident thus causing the bus to skid into Zelayeta's car.

After the accident there was a considerable quantity of debris scattered in the northbound lanes. There were certain marks on the highway in the northbound lanes, none in the southbound lanes. These scrape marks began near the single white line in the northbound lane and extended over to the shoulder on that side of the highway. There were, apparently, no skid marks. After the impact, both cars crashed through the east guardrail. The bus rolled down the embankment and ended up on its right side. Zelayeta's car was upside down, facing east, with most of it through the guardrail, the

remainder on the shoulder. It caught fire immediately after the accident.

Several witnesses testified that the damage to Zelayeta's car on the left side was more extensive than on the right, but there was substantial damage on both sides. The bus was damaged on both sides.

The evidence is obviously conflicting on the issues of negligence and contributory negligence. However, as we read the record, this conflict is not as great as appellants would have us believe. We think that the evidence is not only substantial to support the implied findings of the jury on these issues, but that it preponderates in favor of respondents.

### *Was Opinion Evidence Admissible as to the Point of Impact?*

One of appellants' major contentions is that it was serious and prejudicial error to permit Henry W. Edwards, Jr., a state traffic officer, who arrived at the scene after the accident occurred, at about 4:55 p.m., to give his opinion, based upon what he then observed, as to the point of impact. This testimony came into the record under the following circumstances: Edwards testified that he had been a traffic officer for seven years, during which time he had investigated, officially, about one accident a day; that it was his duty to investigate accidents and to report to his superiors his conclusions and opinions as to what caused the accidents and how they happened. He described in detail what he saw at the scene of the accident. He observed the points of rest of the two cars and the nature of the damage to them, the extent, course, location, and nature of the debris, and the scrape marks, their course and nature. He was first asked a hypothetical question as to his opinion of the safety of operating a bus at 50 miles per hour under the circumstances described in the question. A defense objection was sustained, and, after argument in chambers, again sustained. Edwards was then asked his opinion as to whether a bus would skid under certain assumed conditions. An objection to this question was sustained. Then he was asked if, based solely upon what he had observed at the scene, he had formed an opinion "as to the approximate point of impact in the highway between the two vehicles." An objection was made that "whether or not he has an opinion is irrelevant and immaterial." The court stated: "I think that perhaps he can state his opinion as to the point of impact from his observation, but not from

having talked to other witnesses. If the question were reframed so as to contain only matters within his own observation, I think he could express an opinion." After a colloquy between court and counsel, in which counsel for respondents and the court agreed that the opinion must be based on what the witness observed, at the scene of the accident, the question was reframed, and the question asked: "Now, limiting yourself to what you saw yourself at the scene of the accident . . . have you an opinion as to approximately what point in the highway this impact occurred between the bus and the Zelayeta car?" The following then occurred:

"THE COURT: Let's make it specifically excepting any information that may have come to him from talking to others. MR. AMES: That is right. THE COURT: In other words, we are confining ourselves to matters solely wtihin your observation. Is that clear to you, sir? A. Yes. Q. Omitting from consideration here anything that may have been said to you by other people; is that clear? A. Yes. MR. SMITH: He is to state what the fact is as he determined it. THE COURT: The point of impact, yes. You have an opinion? MR. SMITH: Your Honor, I submit it is not the opinion which is admissible, but what he determined is the fact. THE COURT: Yes. MR. AMES: No, I think opinion is the thing we are asking for. THE COURT: Q. Have you formed an opinion as to the place of impact, point of impact? Have you formed an opinion? A. Yes. Q. If the question isn't clear to you, please, in fairness to all of us, please say so. We want you to understand the question first of all, because that is very important. A. Yes, I understand what we are trying to do. Q. You understand the question, do you? A. Yes, sir; yes. Q. You have an opinion? A. Yes. Q. What is that opinion, sir? MR. SMITH: Your Honor, may my objection stand to the question then, on the ground that, in my humble opinion, it is calling for expert testimony, and it is incompetent, irrelevant, and immaterial; it is a pure question of fact for the jury to determine and not this gentleman to tell the Jury. THE COURT: As long as it is based on what he actually saw. In making my ruling I want to emphasize that. All right, you may state it. MR. AMES: Q. Will you give us your opinion, Officer? A. Well, you want to know, now, my opinion as to where the point of impact was? Q. Yes. A. I would say it was in the northbound passing lane about two or three feet east of the dividing line."

The witness then indicated on a chart precisely where he

believed the collision occurred, and then, over objection, gave as his reason for his belief the following: "I would base that reasoning on the location of the greater part of the debris, where the debris started, the direction of travel of the debris, upon the gouge marks in the roadway, upon the damage to the vehicles—on all of those."

It should be here pointed out that appellants produced Officer Porter, who arrived at the scene with Edwards, and also produced Sergeant Schram, Edwards' superior officer, and asked them if, from their observations at the scene of the accident, they had formed an opinion as to the point of impact. After receiving affirmative replies, both testified that, in their opinion, the impact occurred in the southbound lane.

Appellants argue the question of the admissibility of Edwards' opinion as if it were the most vital evidence in the case. They greatly overemphasize and exaggerate its importance. Edwards had testified, as did several other witnesses, as to what he observed at the scene of the accident. On direct examination he gave the reasons upon which his opinion was predicated. Eyewitnesses testified as to the point of impact. Two other officers, at least equally competent, gave contrary opinions based upon the same facts. The jury had all this evidence before it. Under these circumstances, assuming that it was error to permit Edwards to give his opinion as to the point of impact, such error could not have been prejudicial. The transcript in this case covers some 1,620 pages. A great deal of this record is devoted to the issue of where and how the collision occurred. The case was hotly contested and well tried on both sides. During such a trial it would be a rare occurrence indeed if some error in the admission or exclusion of evidence did not occur. It was to prevent reversals because of such errors, if they were not prejudicial, that article VI, section 4½ of the Constitution was adopted. (*Conner* v. *East Bay Mun. Utility Dist.*, 8 Cal.App.2d 613 [47 P.2d 774, 48 P.2d 982].) After reading this record we are convinced that Edwards' testimony, whether rightfully or wrongfully admitted, played a very minor part in the ultimate determination of the case.

Moreover, in our opinion, it was within the discretion of the trial court to admit this opinion evidence. Appellants assume that Edwards was permitted to give his opinion solely as a nonexpert, and contend that the exception to the rule that a nonexpert cannot give his opinion is limited to cases

of necessity where the opinion is not only based on probabilities, but where the subject matter is so complex or subtle that, from a practical necessity, the ultimate fact can only be conveyed to a jury by means of an opinion. Appellants then urge that these conditions did not here exist. They seem to argue that the only time an expert can give an opinion is when he bases his opinion upon a hypothetical question. The expert is not permitted, so they seem to argue, to base his opinion upon facts which he himself observed.

Such arguments are based upon a misconception of the nature of expert testimony. ■ In a proper case, an expert can give his opinion whether or not he bases such opinion on facts presented in a hypothetical question, or upon facts he observed for himself. The key question is whether or not the subject under discussion is one permitting expert testimony, not the source of the facts upon which the opinion is predicated.

One of the leading cases on this subject is *Manney* v. *Housing Authority*, 79 Cal.App.2d 453 [180 P.2d 69], an able and well-reasoned opinion written by Justice Dooling of Division Two of this court. There, a fire chief, who arrived on the scene after a fire had started, was permitted to give his opinion as an expert as to the cause and starting place of the particular fire. The opinion was based upon what the fire chief observed at the scene of the fire, not upon facts given in a hypothetical question. The trial court's judgment was predicated upon this opinion evidence. The appellate court held that the fire chief could properly give his opinion as to the cause of the fire, and that, in so testifying, he was doing so as an expert and not as a nonexpert, even though his testimony was predicated upon facts he observed at the scene of the fire. The discussion of this point is so apt and so clear that we quote from it at some length. Starting at page 459 the opinion states:

"The two instances in which the opinions of witnesses are permitted in evidence are: 1. The opinions of experts are admitted in matters which are not within the common experience of men so that the special knowledge of a person of skill and experience in the particular field may enable him to form an opinion, where men of common experience would not be able to do so. [Citing authorities.] 2. The opinions of nonexpert witnesses are admitted as a matter of practical necessity when the matters which they have observed are too complex or too subtle to enable them accurately to convey them

to court or jury in any other manner. [Citing authorities.]

"For a nonexpert to be competent to give an opinion under the second exception he must be testifying about facts that he has personally observed; but the expert in any case proper for the reception of expert testimony may give his opinion, although he did not personally observe the facts, basing his opinion upon the facts testified to by other witnesses put to him in the form of hypothetical questions. (10 Cal.Jur., Evidence, § 222, p. 965.) The ultimate question to be determined in every case in which expert testimony is tendered is whether the case is one outside of the common experience of men so that a person of training and experience by reason of his superior knowledge is better able to reach a conclusion from the facts. If the case is one for expert testimony this is so not because the expert has witnessed the facts, but because he is qualified by reason of his special knowledge to form an opinion on the facts while the ordinary juror is not. It is a confusion of the two exceptions to the rule excluding opinion evidence to make the reception of expert testimony dependent upon the fact that the expert has been a personal witness to the facts.

"Cases can be mustered to support the proposition that expert evidence is admissible to prove the cause of a fire. (See cases collected in the note in 131 A.L.R., p. 1124, col. 1.) Cases can be assembled to support the contrary proposition. (See cases collected in the same note at p. 1124, col. 2.) Such an approach is mechanical rather than logical. The cause of some fires may be so simple as to fall within the common experience of any juror. If that is true the evidence of experts is unnecessary to assist the jury. To give a simple illustration any juror knows from his own experience that the application of a lighted match to dry grass will cause a fire. The cause of other fires may be so foreign to the common experience of the ordinary juror that he cannot know without the aid of expert testimony whether a fire might be expected to result or not. For example whether the combination of two chemical products would result in combustion. In the latter case only the evidence of experienced and trained chemists might enable the jury to arrive at the correct conclusion. The matter was well put by Owen, J., in *Baltimore & O. R. Co.* v. *Schultz,* 43 Ohio St. 270 [1 N.E. 324 at p. 332, 54 Am.Rep. 805]:

" 'It must not be supposed that there is any rule of evidence concerning the opinions of witnesses which is peculiar

to fences, highways, bridges, or steamboats, or to any other special subjects of investigation. Where the facts concerning their condition cannot be made palpable to the jurors so that their means of forming opinions are practically equal to those of the witnesses, opinions of such witnesses may be received, accompanied by such facts supporting them as they may be able to place intelligently before the jury.'

''Nor, may we add, should there be any rule of evidence concerning the opinions of witnesses which is peculiar to fire, flood or other catastrophe. The inquiry should not be is expert evidence admissible to prove the cause of fires generally, but rather is expert evidence admissible to prove the cause of this particular fire; and the answer to that question should depend on the answer to the further question: Is the matter involved one which is not within the common experience of men so that the special knowledge of a person of skill and experience in the particular field may 'enable him to draw an inference, where men of common experience, after all the facts proved, would be left in doubt.' (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 571 [147 P. 238].)

''It is our conclusion that the question whether this fire originated in the hot-air ducts is a matter outside the ordinary experience of men and that expert testimony was properly admissible upon the subject. We therefore hold that it was not error to admit the opinion of the witness Cooper.

''Appellant complains that Cooper was permitted to express his opinion based partly on hearsay, which he gathered from persons not called as witnesses. It is true that during the laying of the foundation for his expert opinion the witness testified that he had conducted an investigation after the fire and that he had formed an opinion based partly upon what he had learned in that investigation; but before he gave his opinion he was admonished by the judge that his opinion must be based on his study and experience bringing them 'to focus on the conditions that you found there and not on what somebody else told you or what somebody else may have said was their opinion about the fire.' That the witness obeyed this admonition seems clear from the fact that after giving his opinion he testified that it was based on 'the condition of the ducts and the fire at the time of my immediate arrival.' ''

■ Thus, expert testimony is admissible or not dependent upon whether the subject matter is within common experience or whether it is a special field where the opinion of one of skill and experience will be of greater validity than that

of the ordinary juryman. It is quite obvious that the conclusion, based upon the facts of the particular case, as to just where a collision between two vehicles occurred, may be so obvious that any reasonable person, trained or not, can draw that inference from the facts. It is equally clear that cases may occur where the opinions of trained experts in the field on this subject will be of great assistance to the members of the jury in arriving at their conclusions. In such cases a traffic officer who has spent years investigating accidents in which he has been required to render official reports not only as to the facts of the accidents but also as to his opinion as to their causes, including his opinion, where necessary, as to the point of impact, is an expert. Necessarily, in this field, much must be left to the common sense and discretion of the trial court. (*Nolan* v. *Nolan,* 155 Cal. 476 [101 P. 520, 132 Am.St.Rep. 99, 17 Ann.Cas. 1056] ; *Lacy Mfg. Co.* v. *Gold Crown Mining Co.,* 52 Cal.App.2d 568 [126 P.2d 644].)

There are many confusing cases discussing this subject. Thus it has been held that a garage mechanic cannot testify, based on facts set forth in a hypothetical question, as to the probable course of two colliding automobiles after the impact (*Fishman* v. *Silva,* 116 Cal.App. 1 [2 P.2d 473]) ; or as to speed of two colliding cars, or which one was travelling faster (*Johnston* v. *Peairs,* 117 Cal.App. 208 [3 P.2d 617]) ; or as to whether an accident could have been avoided under certain circumstances (*Moore* v. *Norwood,* 41 Cal.App.2d 359 [106 P.2d 939]). Cases are in conflict as to whether the cause or starting point of a fire may be the subject of expert testimony. (*St. Paul F. etc. Co.* v. *Southern Pac. Co.,* 30 Cal.App. 140 [157 P. 247] ; *Gallichotte* v. *California etc. Assn.,* 23 Cal.App.2d 570 [74 P.2d 73, 535] ; *Manney* v. *Housing Authority,* 79 Cal.App.2d 453 [180 P.2d 69].) In *Mace* v. *Watanabe,* 31 Cal.App.2d 321 [87 P.2d 893], a witness was permitted to testify that a certain mark on the highway appeared to have been made by a ''free running wheel.'' (See many conflicting cases collected in annotations in 66 A.L.R. 1117; 70 A.L.R. 540; 94 A.L.R. 1190.)

Appellants place particular reliance on *Stuart* v. *Dotts,* an opinion of this court, 89 Cal.App.2d 683 [201 P.2d 820], in which a police officer was permitted at the trial to give his opinion as to whether a collision between an automobile and a pedestrian occurred within or without a certain crosswalk. It was held that the introduction of such testimony was error, not because the subject matter of the question was not

a proper subject of expert testimony, but because the proper foundation was not laid. The police officer conceded that his opinion was predicated not only upon what he observed after the accident, but also upon an interview with the plaintiff, a written statement of defendant, and upon the results of conversations with certain unidentified people around the scene of the accident. In the instant case the opinion was predicated on facts already before the jury. The case is not in point.

Respondents urge that appellants, by later introducing into evidence the opinions of two police officers on the same subject, waived any error that may have occurred. In view of our conclusions that it was not error to admit this testimony, and that even if it were error such error was not prejudicial, we do not find it necessary to pass upon this question of waiver.

*Was It Error to Refuse to Give a Requested Instruction That Evidence of Compromise of Other Claims by Appellants Was Not an Admission of Liability?*

Several of the passengers on the bus suffered injuries to their persons or property in the collision. The bus company settled the claims of at least some of these passengers. A goodly number of these passengers were called as witnesses, some by respondents and some by appellants. In one way or another respondents tried to get before the jury the fact that the appellant bus company had settled the claims of these witnesses. In some cases objections were sustained to these questions, and the jury instructed to disregard them, while in other cases such evidence came in without objection. Under such circumstances the appellants offered, and the trial court failed to give, the following instruction: "I instruct you that the fact that the Pacific Greyhound Lines compromised and settled the claims of certain of the witnesses who have testified here in Court was permitted in evidence for the sole purpose of showing a fact from which an inference of interest or bias of the witnesses may be drawn. The law favors compromises and settlements and the compromise and settlement of any claim between Pacific Greyhound Lines and any of its passengers arising out of the accident in this case shall not in any wise be taken as an admission or inference of liability of the Pacific Greyhound Lines as to the plaintiffs in this case. I further instruct you that the duty of care and the responsibility owed by the Pacific Greyhound Lines to its passengers was entirely different than the duty of care owed by the Pacific Greyhound Lines to persons using the highway, including Lawrence Zelayeta, the deceased."

■ Evidence of the settlement of the claims of the bus passengers was not admissible as an admission that the Greyhound was liable for Zelayeta's death. (*Curtis* v. *McAuliffe,* 106 Cal.App. 1 [288 P. 675]; *Brown* v. *Pacific Electric Ry. Co.,* 79 Cal.App.2d 613 [180 P.2d 424].) ■ But such evidence may be admissible to show bias or prejudice of an adverse witness, or, in a proper case, may be used to rehabilitate a witness. ■ For these reasons the proffered instruction undoubtedly states correct principles of law and could have been given to the jury. The question is, under the facts, was it error to fail to give it, and, if so, was such error prejudicial?

The issue arose during the examination of five witnesses, two of whom were produced by respondents and three by appellants. Reference will be made to the circumstances of each case.

Mrs. Hunter, one of the bus passengers, was called by respondents. She testified that the bus was travelling 45 miles per hour prior to the collision, and that just before the accident the operator of the bus slammed on his brakes and the bus skidded to its left, and then the accident occurred. At the very close of her direct examination she was asked if the Sunday after the accident a representative of the bus company had called at her home. An objection was sustained. She was then asked if, on that day of the trial, she had a "claim or suit pending" against Greyhound. She replied that she did not. On cross-examination counsel for appellants confronted the witness with a statement she had given to a representative of Greyhound in which she said that she was asleep at the time of the accident. On redirect, in attempting to rehabilitate his witness and to explain these contradictory statements, counsel for respondents asked the witness several questions which implied that the statement had been given as part of a settlement of her claim, and that the giving of such statement was a condition precedent to such settlement. The witness answered that she had signed the statement but did not know for what reason it had been requested. Then she was directly asked "Well, did you settle the claim with the company at that time?" An objection was sustained to this question, the court stating: "I will sustain the objection. You needn't answer the question. The jury is instructed to disregard the asking of that last question." Thereafter, appellants moved for a mistrial based on the asking of these

questions, the matter was argued in chambers, and the motion denied.

The other witness called by respondents was Mrs. March, also a passenger in the bus, who was called as a rebuttal witness. On her cross-examination counsel for appellants sought to impeach her by using a part of a deposition the witness had given in an action growing out of this accident, but other than the one then being tried. On redirect, counsel for respondents offered the entire deposition with the statement that it had been taken in June of 1947 in an action entitled. *March* v. *Greyhound.* No objection was made to this statement, the deposition was admitted, and the redirect examination of the witness continued. She was then asked, and no objection was made, who her attorney was ''in connection with this suit you had pending at that time, when your deposition was taken.'' After she had identified her then attorney she was asked ''Have you a claim now pending against them?'' She answered that she did. not, whereupon the following occurred: ''MR. SMITH: I assign that as misconduct on the part of counsel. There isn't a claim pending now. THE COURT: I will sustain the objection and instruct the jury to disregard it. I won't take any further step, because I think, inasmuch as that was mentioned to the jury on some occasion, I think that you probably conveyed that information to the jury. MR. AMES: He brought it out. THE COURT: Any statement just before the witness testified is stricken out and the jury is instructed to disregard the asking of that question and erase it from your mind. MR. AMES: Then I move to strike out counsel's remark of when he implied that she hasn't a claim pending now. THE COURT: That may go out too. Statements of counsel in that connection are to be disregarded; the jury is to pay no attention to them.''

The other three witnesses who mentioned this subject were produced by appellants, and the subject came up on their cross-examination. Thus, the witness Faraoli, on cross-examination, volunteered, in a nonresponsive answer, that he had put in a claim with Greyhound for damage to his clothing. He was then asked: ''And before you settled that claim, didn't you have to give them a statement?'' The witness replied ''Yes, they took a statement, naturally.'' No objection was made to this question and answer.

Passenger Luce, on cross-examination by respondents' counsel, without objection, was permitted to testify she had received a check from Greyhound for her injuries after she

had signed a statement for Greyhound. On redirect, appellants brought out that this check was for $35.

Osenko, another passenger, on cross-examination in response to questions by respondents' counsel, testified, without objection, that a Greyhound representative, after he gave a statement, settled his claim for damages. On redirect, appellants' counsel brought out that the claim was simply for clothing torn in the accident.

Appellants concede that the questions asked their three witnesses—Faraoli, Luce and Osenko—having been asked on cross-examination, were proper for the purpose of showing bias and prejudice, but urge that it was highly improper to ask these questions of respondents' own witnesses. Respondents reply that the purpose of these questions asked their own witnesses was to rehabilitate them after they had been impeached. ██ Moreover, respondents correctly point out that the witness Hunter never did answer the question as to whether she settled her claim, while as to the witness March it was appellants who first produced the deposition showing that at one time she had a claim pending. Of even more importance, in the case of these two witnesses the trial judge struck out the evidence and instructed the jury to disregard the questions and comments. Moreover, the court, in its regular instructions to the jury at the conclusion of the trial, instructed:

"You shall not consider as evidence any statement of counsel made during the trial, unless such statement was made as an admission or stipulation conceding the existence of a fact or facts.

"You must not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken out by the court; such matter is to be treated as though you never had known of it."

Any error, misconduct, or prejudice in the asking of these questions was thus cured. (*Holder* v. *Key System*, 88 Cal. App.2d 925 [200 P.2d 98]; *Downey* v. *Bay Cities Transit Co.*, 94 Cal.App.2d 373 [210 P.2d 713].)

So far as the two witnesses produced by respondents are concerned, their testimony was stricken and the jury instructed to disregard their testimony. ██ The only remaining question is whether the jury should have been instructed, in view of the cross-examination of the three witnesses produced by appellants, that evidence as to settlement

of the claims merely went to the issue of possible bias or prejudice of the witnesses and was not an admission of liability. We think that the instruction should have been given, but we are of the opinion that the failure to give it was not prejudicial error. The instruction, if given, would have affected, at most, only the evidence of Faraoli, Luce and Osenko. Faraoli volunteered the statement that he had put in a claim for damages to his clothing, and that that claim had been settled before he gave a statement. Luce testified that she had received a check from Greyhound before giving a statement, which check, appellants brought out, was for $35. Osenko testified that he had settled a claim for damages to his clothing before giving a statement. In view of the prompt and unequivocal action of the trial court in striking out such testimony of the witnesses Hunter and March, and, in view of the minor nature of the claims settled by Greyhound, it is inconceivable that any reasonable member of the jury could have believed that the settlement of such claims amounted to an admission of liability for the death of Zelayeta. The jury was not instructed that such settlement amounted to an admission, nor is any contention made that such was argued to the jury. We conclude, therefore, that the error to give the proffered instruction was not prejudicial.

*Was It Error to Refuse Admission Into Evidence as a Claimed Admission an Affidavit of Respondents' Counsel?*

The background of this point is as follows: Dixon, a bus driver employed by Greyhound testified that he had witnessed the collision from a bus he was driving which he claimed was northbound, and which he claimed was stopped at a bus stop near the scene of the accident. He testified that he saw Zelayeta go over the double white line into the path of the oncoming bus. This was strong testimony indeed in support of appellants' position. Respondents tried to discredit and to impeach this testimony. They contended that the testimony was fabricated, and produced evidence that no such bus was observed at the scene of the accident. Appellants produced witnesses who testified that they saw Dixon and his bus where he stated he had been. Respondents made much of the fact that appellants were unable to produce any records covering Dixon's schedule for the day of the accident. Thus, there was a direct conflict on this issue. To strengthen their position, appellants offered into evidence an affidavit of respondents' counsel. This affidavit had been made by the

chief counsel for respondents prior to trial and filed in connection with a motion to produce records. This affidavit recites that the attorney is familiar with the facts set forth in the affidavit and requests an order permitting the inspection and furnishing of copies of certain records of Greyhound. Among the documents requested is: ''The original or an exact copy of those certain books, records and reports showing the name and address of the driver of that certain northbound Greyhound bus owned, operated and maintained by the defendant, Pacific Greyhound Lines, Inc., whose destination was the Greyhound bus station in San Francisco, California, which approached and arrived at the scene of the accident set forth and described in plaintiffs' complaint on file herein on the 24th day of November, 1945, at or about the hour of 4:30 o'clock P.M. of said day on the Bayshore Highway . . .''

The appellants urge that this averment amounts to an admission that a Greyhound bus driver had ''approached and arrived at the scene of the accident . . . at or about the hour of 4:30 o'clock P.M.'' of said day, and should have been admitted into evidence as such. The trial court excluded it on the authority of *Adelstein* v. *Greenberg,* 77 Cal.App. 548 [247 P. 520]. In that case one of the counsel, in an argument on a demurrer, made the statement that there had been an assignment of the lease involved. On the trial, opposing counsel sought to introduce this statement as an admission. The trial court excluded it, first, because it was a mere conclusion, and second, ''even if it could be regarded as a matter of fact, [it] was not binding on respondents because it was not made during the trial of the action on the merits as an admission or stipulation of fact.'' (P. 552.)

In the instant case it is apparent that the statement in the affidavit was never intended to have effect as an admission, nor could appellants have assumed, reasonably, that it was intended to have that effect. When the motion to produce records was filed, respondents' counsel then apparently knew that the Greyhound claimed to have an eyewitness who was a bus driver, and was trying to find out before trial who that driver was and what the company's records showed as to his activities on that day. Perhaps respondents' counsel believed in October of 1948, when the motion to produce was made, that such a driver had been present, but by June of 1949, when the case proceeded to trial, he had discovered evidence that caused him to doubt that assumption. The statement in the affidavit was merely an incidental statement that, from its very nature,

indicates that it was never intended to constitute an admission. In *Coats* v. *General Motors Corp.*, 3 Cal.App.2d 340 [39 P.2d 838], the court was considering a remark made by one of the counsel during the trial made on cross-examination of a witness. In holding that it did not constitute an admission, the court stated (p. 350): "Mere incidental or ambiguous statements by counsel will not bind or be admissible against the client where there is no such formality in the making of the statements as to indicate an intention that they should be taken as admissions. Obviously such was not the purpose here, and the remark lacked the force or effect of an admission."

Of course, statements of counsel made prior to the trial (*Bell* v. *Staacke*, 159 Cal. 193 [115 P. 221]), or in argument at the trial (*Scafidi* v. *Western Loan & Bldg. Co.*, 72 Cal.App.2d 550 [165 P.2d 260]), can constitute admissions, but, to be such, the court must be able to say that it was reasonably intended to be an admission or reasonably construed by the other side as such. (In addition to the cases cited, see *Sichterman* v. *R. M. Hollingshead Co.*, 117 Cal.App. 504 [4 P.2d 181], where statements in a brief in a previous trial were held not to constitute admissions.) The affidavit here involved was not so intended and reasonably cannot be so construed.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 14, 1951, and appellants' petition for a hearing by the Supreme Court was denied August 9, 1951. Edmonds, J., voted for a hearing.