[Civ. No. 22103.   Second Dist., Div. Three.   Aug. 5, 1957.]

RIVA MILLSTEIN, Appellant, v. IRA I. SPEKTOR, Respondent.

Max Fink, Cyrus Levinthal, Emmet G. Lavery, Jr., and Ronald K. Lipstone for Appellant.

Spray, Gould & Bowers for Respondent.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment entered on a jury verdict in an action for damages for personal injuries. The case arises out of an alleged collision between automobiles.

Originally the complaint named Ira I. Spektor and George Banker as defendants. Banker did not appear. When the action came on for trial plaintiff dismissed as to Banker.

The accident occurred in the early afternoon of September 29, 1953, near the intersection of Venice Boulevard and Bagley Avenue in Los Angeles. In that area Venice is a divided highway running generally easterly and westerly. There are three lanes for eastbound traffic on the south side, designated in the record as lanes 1, 2, and 3, with lane 1 immediately adjacent to the divider. Cardiff Avenue runs north and south. Bagley Avenue intersects Venice one block east of Cardiff. Traffic at the intersection of Venice and Bagley is controlled by red and green lights.

Defendant drove north on Cardiff to Venice, stopped at a boulevard stop, entered Venice, and turned east in lane 3.

His intention was to proceed on Venice to Bagley and make a left turn. He testified that as he entered Venice, traffic coming easterly was about a block away and that as he traveled from Cardiff to Bagley he did not observe any traffic behind him. He further testified he worked his way to lane 1 to make a left turn; the traffic lights at Bagley for traffic moving east were green; when he reached Bagley he made a left turn across the divider and stopped before entering the north half of Venice; while he was stopped he heard a crash in which plaintiff was involved.

Plaintiff testified she was driving east on Venice in lane 1; Banker was driving east in lane 2; defendant was "probably" in lane 3 driving at a high rate of speed; defendant made a left turn in front of Banker; Banker swerved in front of her; she slammed on her brakes and her car skidded; her car wound up with the front wheels over the curb of the divider.

Banker testified he was driving east on Venice in lane 2; plaintiff was in lane 1 on his left; defendant was in lane 3 on his right. Banker told a police officer immediately after the accident that he was driving in lane 1 just ahead of plaintiff. Banker further testified that about 10 feet from Bagley defendant cut in front of him; he (Banker) cut over to the left "a little bit" and cut back to avoid hitting defendant; defendant was driving at a "moderate speed"; defendant completed his turn into Bagley; he (Banker) has an impairment of his vision—he has one eye.

A police officer who investigated the accident testified plaintiff's car stopped 36 feet west of the westerly curb line at Bagley and that it left about 60 feet of skid marks on the highway, and "during the skid that the car was straddling the two lanes." He further testified plaintiff told him she had been following behind another car and this other car had "to make a sudden stop because the car in the lane to our right made a left-hand turn."

Counsel for defendant called one of plaintiff's counsel as a witness on behalf of defendant and the following occurred: "Q. [By MR. SPRAY, counsel for defendant] Mr. Fink, you are the attorney of record here for Mrs. Millstein? A. Yes, I am, sir. Q. Did you at the beginning of this trial make a motion to this court to dismiss the complaint in this action against the defendant Banker? A. Yes. Now may I explain my answer? MR. SPRAY: I don't think there is any explanation necessary, I submit, your Honor. Q. Did you or did you not? A. I insist on explaining my answer. MR. SPRAY: I

think the answer is 'yes.' It doesn't need any explanation, your Honor. THE COURT: The question has been answered. Q. BY MR. SPRAY: And that motion was granted by the Court, Sir? A. There was no objection to it, I am sorry, there was no objection, and the Court granted the motion.'' Counsel for plaintiff was then cross-examined by his associate and this redirect followed: ''Q. [BY MR. SPRAY] Did you make any kind of a deal with Mr. Banker? A. We did not. Q. Did he pay you any money? A. He did not. Q. I mean your client. A. No. Q. All right. Did you make any deal with him to dismiss the complaint against him if he would testify that he was over in the second lane instead of the first lane? A. No. As a matter of fact—— Q. Just a minute. You just please answer the question. You are a lawyer. Did you or didn't you? A. I guess I am a lawyer, all right, but what is the question, now? MR. SPRAY: Read it, Mr. Reporter. A. And for the record—— MR. SPRAY: Just a minute, your Honor. THE WITNESS: Just a moment, please. MR. SPRAY: I think the question has been answered by 'no.' MR. FINK: And I want to put in the record at this point that I charge counsel with misconduct for suggesting in this honorable courtroom before this Court and jury that an attorney at law, an officer of this court, is guilty of any misconduct without the slightest basis upon which to ever put such a question. MR. SPRAY: I move the answer be stricken out. Counsel can argue that to the jury. THE COURT: Answer stricken out. Jury disregard it. MR. SPRAY: That is all. MR. LAVERY: As the witness says, counsel, I would like to have the record indicate I cite counsel for misconduct in this question. THE COURT: Jury disregard the argument of both counsel, entirely disregard it. MR. SPRAY: I will be glad to have the Court rule whether I am guilty of any misconduct in this case at all. I asked counsel to stipulate he did dismiss, and he wouldn't.'' There was no denial of the statement that counsel for plaintiff had refused to stipulate he had dismissed as to Banker.

The first point made for reversal is that the court erred in refusing to give the following instruction requested by plaintiff:

''When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly directed conduct, contribute concurrently and as proximate causes to the injury of another, each of such persons is liable in the absence of contributory negligence. This is true regardless of the relative degree of the contribution.

It is no defense for one of such persons that some other person, not joined as a defendant in the action, participated in causing the injury even if it should appear to you that the negligence of that other person was greater in either its wrongful nature or its effect.''

The argument is that the jury could have concluded Banker was negligent when he moved from lane 2 into lane 1 and that his negligence as well as that of defendant caused plaintiff's injuries; the fact that Banker may have been negligent and that his negligence may have combined with that of defendant does not relieve defendant of liability, and the jury should have been told so.

■ There was no error. The subject matter of the refused instruction was adequately covered by instructions given. The instruction refused is B.A.J.I. 104B. The court gave B.A.J.I. 104 and 104A, which read:

''The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause —the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies.'' (B.A.J.I. 104.)

''This does not mean that the law seeks and recognizes only one proximate cause of an injury, consisting of only one factor, one act, one element of circumstance, or the conduct of only one person. To the contrary, the acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such a case, each of the participating acts or omissions is regarded in law as a proximate cause.'' (B.A.J.I. 104A.)

The court further told the jury:

''The burden is upon the plaintiff to prove by a preponderance of evidence that defendant was negligent and that such negligence was a proximate cause of injury to the plaintiff. If plaintiff has not fulfilled this burden, the defendant is entitled to your verdict, and you need not consider the issue of contributory negligence. If, however, plaintiff has fulfilled this burden as against the defendant, he is entitled to recover unless the defense of contributory negligence has been established under the court's instructions.''

The jury was clearly told that the acts of two or more persons may operate concurrently as the proximate cause of an injury and, if that is so, each is responsible.

It is trite to say it is not necessary for the court to give instructions in the particular language requested; and that if the subject matter is properly covered and the law applicable to the case is fairly and fully given, it is sufficient. Such was the fact in the present case.

Lastly, plaintiff asserts defendant's counsel was guilty of prejudicial misconduct in conducting the examination of her counsel, quoted above. It is argued the examination served no purpose other than to accuse Banker of perjury and plaintiff's counsel of subornation of perjury. ▇ There was nothing improper in the direct examination. Counsel merely brought out that plaintiff at the beginning of the trial dismissed the action against Banker, a fact which he had a right to show. On cross-examination plaintiff's counsel testified in effect that he named Banker as a defendant and did not dismiss against him until the trial because he believed it his duty to his client to have everyone a party to the action who might be remotely associated with the case as long as there was any possibility that further investigation might reveal some liability. Further, counsel for plaintiff did not assign the direct examination as misconduct or request the court to admonish the jury to disregard it.

▇ As to the redirect examination, the questions seeking to ascertain whether Banker had paid any money for the dismissal were proper. If Banker had paid plaintiff any money for the dismissal that amount would have been applied as a credit *pro tanto* on any judgment which might have been rendered against defendant. ▇ The other question on redirect, ''Did you make any deal with him to dismiss the complaint against him if he would testify that he was over in the second lane instead of the first lane?'' to which plaintiff's counsel answered ''No,'' was improper. On the record, in view of the answer and the court's admonition to the jury, we do not believe the mere asking of the question was prejudicial. Counsel for defendant had justification for suspecting that Banker had committed perjury—Banker had told a police officer he was driving in lane 1 and had testified he was driving in lane 2, and plaintiff had told the officer she had been following behind another car and this other car had ''to make a sudden stop because the car in the lane to our right made a left-hand turn.''

The answer was favorable to plaintiff. *Jonte* v. *Key System*, 89 Cal.App.2d 654, says (p. 657 [201 P.2d 562]):

"Concerning the alleged misconduct appellant complains that plaintiff's attorney on cross-examination asked questions about conferences of defendant's witnesses with employees and attorneys of defendant Key System and about possible suggestion which might have influenced the testimony. No objections to such questions were interposed except for one not clearly defined objection to a remark of plaintiff's attorney that these questions were not meant to imply anything but only to have the jury know what the witness knew about the evidence. The objection was overruled and correctly so. Where the testimony of eyewitnesses is as inconsistent as in this case, counsel must have a certain freedom to inquire into the origin of the contradictions. Moreover, the questions had been answered and in a manner not unfavorable to appellant."

Furthermore, counsel for plaintiff immediately charged counsel for defendant with misconduct and the court said: "Jury disregard the argument of both counsel, entirely disregard it." In its regular instructions at the conclusion of the trial the court gave the instruction quoted in the margin.[1] We think the instructions to the jury were broad enough to admonish them to disregard any implication of wrongdoing on the part of counsel for plaintiff arising from the question. ▮ Jurors are presumed to have complied with instructions to disregard any sinister intimation arising from questions. (*People* v. *Pearson*, 111 Cal.App.2d 9, 20 [244 P.2d 35]. Also see *People* v. *Letourneau*, 34 Cal.2d 478, 493-494 [211 P.2d 865].) "It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of an act of counsel and remove any effect his conduct or remarks would otherwise have." (*Winchell* v. *Lorenzen*, 123 Cal.App.2d 704, 711 [267 P.2d 398].) ▮ Prejudice does not necessarily result from every mistake of enthusiastic counsel. (*People* v. *Johnson*, 105 Cal. App.2d 478, 488-489 [234 P.2d 116].)

▮ The trial judge is in a much better position than

[1] "You shall not consider as evidence any statement of counsel made during the trial, unless such statement was made as an admission or stipulation conceding the existence of a fact or facts.

"You must not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken out by the court; such matter is to be treated as though you never had known of it."

a reviewing court to determine whether the verdict is probably due, wholly or in part, to misconduct of counsel. Yet plaintiff did not move for a new trial and thus give the trial judge an opportunity to pass on the question. The incident probably would not have occurred had counsel for plaintiff stipulated to the obvious fact that he had dismissed as to Banker. Any misconduct or prejudice in the asking of the question was cured by the court's instructions. (*Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 716, 731 [232 P.2d 572] ; *Downey* v. *Bay Cities Transit Co.*, 94 Cal.App.2d 373, 375 [210 P.2d 713].)

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied August 28, 1957, and appellant's petition for a hearing by the Supreme Court was denied October 3, 1957.