[Civ. No. 31061. Second Dist., Div. Five. Feb. 21, 1968.]

RUTH M. GRANVILLE et al., Plaintiffs and Appellants, v. RONNIE PARSONS, Defendant and Respondent.

Elmer Low and Frederick G. Stoehr for Plaintiffs and Appellants.

Early, Maslach, Foran & Williams and Harry Boyd for Defendant and Respondent.

KAUS, P. J.—Plaintiff Ruth M. Granville sued defendants Short, Parsons, Burris, Keddie and Ginter for the wrongful death of her husband and her own personal injuries.[1] When the case went to trial before a jury all defendants except

---

[1]Two adult children of the deceased joined plaintiff Ruth M. Granville on the wrongful death count. For the sake of simplicity we will refer to plaintiff in the singular.

Parsons had been dismissed. The trial was on the issue of liability only. The verdict was in favor of Parsons and plaintiff appeals.

The basic facts of the accident out of which the action arose are as follows: On Sunday afternoon, June 24, 1962, Burris, Parsons and Short, in that order, were westbound on the San Bernardino freeway at about 6:15 p.m. Heavy traffic forced Burris to come to a stop. All cars were in the inside lane. Burris was rear-ended by Parsons. Short applied his brakes. For reasons which are in dispute Short lost control of his car and it veered over the center divider onto the eastbound portion of the freeway. There it collided with a car driven by the decedent John Paul Granville, in which plaintiff Ruth M. Granville was a passenger, and another car driven by the defendant Ginter.[2] John Paul Granville lost his life in the accident and Ruth M. Granville received personal injuries.

Before the jury was impaneled plaintiff settled with Short for the sum of $38,500 and with Burris for $1,000. The action was dismissed as to them. Keddie and Ginter were also dismissed, but the record does not show whether they paid any consideration.

During the trial that followed counsel for Parsons conceded that the impact between the Parsons car and the Burris car was caused by Parsons' negligence.[3]

The only real issue that was tried was whether or not that negligence was the proximate cause of the collision between the Short car and the Granville and Ginter vehicles on the other side of the freeway. It was, of course, Parsons' contention that Short was negligent and that his negligence was a superseding cause. Plaintiff took the position that (1) Short was not negligent; and (2) if he was, his negligence was not a superseding cause. (*Ewart* v. *Southern Cal.Gas Co.*, 237 Cal. App.2d 163, 170-172 [46 Cal.Rptr. 631].)

Needless to say defense counsel was eager to acquaint the jury with the fact that there had been a settlement between

---

[2] Defendant Keddie was the owner of the car driven by Ginter.

[3] "Now, as I said in that opening statement there is negligence on the part of Mr. Parsons in that accident and that accident with respect to Mr. Burris. I will come back to this.

"Negligence in the air, though, is not sufficient, as one of our more famous jurists made that statement in connection with the proximate cause problem and I want to discuss that more thoroughly with you.

"Even though Mr. Parsons was negligent with respect to Mr. Burris, I respectfully submit that negligence was not the proximate cause of the accident involving the plaintiffs in this particular case. Now, I am not trying to justify Mr. Parsons' conduct. . . .''

plaintiff and Short. Although the amount of the settlement was never disclosed[4] he succeeded all too well.

The legal shadowboxing started during defendant's opening statement. Referring to Short and Burris, counsel stated that both had been defendants in the case, but that they had settled. Counsel for plaintiff objected at the bench. The court's ruling was inconclusive.

Round two took place in chambers before Burris was called as a witness by plaintiff. Counsel for plaintiff wanted an advance ruling that the fact that Burris had settled could not be elicited from him on cross-examination. After some discussion and reference to authorities, the court ruled that the defense could bring out the fact that Burris had been a party and had been dismissed. Defense counsel disavowed any intention of showing the amount of any settlement. There was no ruling with respect to the admissibility of the fact that there had been a settlement.

During Burris' cross-examination defense counsel went no further than the court had expressly permitted. No complaint concerning the Burris cross-examination is made on appeal.

Short was to be the next witness. The legal argument in chambers was resumed. Defense counsel announced his intention to cross-examine Short concerning his status as a dismissed defendant and the fact that there had been a settlement. On the authority of *Millstein* v. *Spektor,* 153 Cal.App. 2d 125, 130 [314 P.2d 184] the court again ruled that the dismissal was a project subject to inquiry. With respect to the question of settlement it ruled on the basis of *Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 716, 728-732 [232 P.2d 572] that it "Looks like he can probably go into it. Depends on how he goes into it as to how the Court would rule."[5]

During Short's direct examination he testified that before the accident he had had occasion to use his brakes and that

---

[4]Since the trial was on liability only, there was no need to acquaint the jury with the amount plaintiff had already collected. (*Laurenzi* v. *Vranizan,* 25 Cal.2d 806, 813 [155 P.2d 633]; but see *Cseri* v. *D'Amore,* 232 Cal.App.2d 622, 624-625 [43 Cal.Rptr. 36].)

[5]When, later, Short was cross-examined concerning the dismissal and the settlement, plaintiff's counsel made no objection. Apparently he felt that during the various discussions at the bench and in chambers he had made his position plain enough and that another adverse ruling before the jury would merely emphasize what he claimed to be error. He apparently overlooked the last remark of the court which invited a further objection. Since the result which we reach on this appeal does not depend on the propriety of the admission of the evidence but the use that was made of it during argument, the failure to object is immaterial.

they seemed to be in good condition.[6] The following then took place during Short's cross-examination by defense counsel: "Q. BY MR. STOTHERS: Well, now, Mr. Short, I gathered from the effect of your testimony that you considered the brakes on your car immediately before this present collision to be in excellent condition? A. Yes, sir. Q. Now, Mr. Short, as of last Thursday when this case was first called to trial, were you not a defendant in this same lawsuit right here? A. I was. Q. And isn't it true that a dismissal has been filed by the plaintiffs against you in this action? A. Yes, sir. Q. Isn't it true that that dismissal was filed because a settlement was made to the plaintiffs? A. I couldn't tell you that. Q. Well, were you not so informed? You were represented by an attorney? A. Yes, sir. Q. Now, were you not so informed that a settlement had been made and a dismissal filed? A. I was not informed any settlement had been made, no. Q. You know that they didn't dismiss this lawsuit for nothing, don't you? MR. LOW: I object, Your Honor, it is a collateral matter. THE COURT: I will sustain it. It is argumentative. Q. BY MR. STOTHERS: You were represented by counsel up until last Thursday, were you not, sir? A. Yes, sir. Q. And you were told by your counsel that Mr. Low had requested that you be available for testifying here in this action? A. Yes, sir."

Finally, the following was said during defense counsel's closing argument: "*They know who was the guilty party in this accident because you heard that Mr. Short was a defendant in this action and settlement*—MR. LOW: May we approach the Bench? THE COURT: I don't know if you can go into the question of somebody else's liability. *You can argue credibility of witnesses.* MR. STOTHERS: Well, I am not arguing outside the evidence, Your Honor, I am going into what the evidence is. THE COURT: All right. You may proceed. You may have an instruction on it, if necessary. MR. LOW: Yes, I would like an instruction on it. MR. STOTHERS: Before this action started, as late as Thursday, I mean, before this trial started Thursday, you heard who were the defendants in this action. *They know who was at fault.* This is a shotgun situation here where they are trying or Mr. Low is trying to hold somebody else in for the sole negligence of Mr. Short." (Italics added.)

On appeal plaintiff lumps all the matters described under one assignment of error, accusing defense counsel of prejudi-

---

[6]It was plaintiff's position during the trial that defendant forced Short to apply his brakes hard and suddenly and that one of them unaccountably locked.

cial misconduct. As we see it, the problem concerning the admissibility of the evidence is somewhat different from that presented by the closing argument.

 As far as the former is concerned the rulings of the court relying on the *Millstein* and *Zelayeta* cases were apparently correct under the law as it stood before January 1, 1967, the operative date of the Evidence Code. *Millstein* does say— without giving a reason—that it is proper to bring out that a witness had been a party[7] and *Zelayeta* does say that it is relevant to the credibility of a witness called by defendant, that defendant has settled with him. It may, says *Zelayeta*, show bias or prejudice. (*Ibid.*, p. 729.) Defense counsel below took the position that if the receipt of money indicates a possibility of bias or prejudice, so does the obtaining of a dismissal. We leave aside the question whether this really follows.[8]

One thing is clear: *Zelayeta* certainly does not hold that evidence of settlement with a former plaintiff who has become a witness for the defendant is admissible against the defendant on the merits. In fact, the case reiterates the contrary rule, now codified in section 1152 of the Evidence Code. "Evidence of the settlement of the claims of the bus passengers was not admissible as an admission that the Greyhound was liable for Zelayeta's death. . . ." (*Zelayeta* v. *Pacific Greyhound Lines, supra*, p. 729.)

 Had defense counsel, in his argument, confined himself to the limited purpose for which the evidence was admissible he would have been within his rights, but no such thing happened. Before the portion of the closing argument which we have quoted he was arguing proximate cause. He made the point that if Parsons had not hit the Burris car he would not have been in the accident, would not have been a defendant, but that Short would have done precisely the same thing as he did. Then came the clincher: "They know who was the guilty

---

[7]The holding is somewhat diluted by the fact that the court mentions that there had been no objection.

[8]*Zelayeta* involved settlements with several plaintiffs who were involved, as bus passengers, in an accident between the defendant's bus and an automobile driven by Zelayeta. Although, because of the applicability of res ipsa loquitur the bus passengers would have been entitled to go to the jury without any evidence of specific acts of negligence by the defendant, (*Shaw* v. *Pacific Greyhound Lines*, 50 Cal.2d 153 [323 P.2d 391]), the fact that after the settlement they testified favorably to the bus company implies a change of position. Short's testimony, on the other hand, was entirely consistent with his position as a former defendant: he was not to blame.

party in this accident because you heard that Mr. Short was a defendant in this action and settlement. . . ."

The court then told defense counsel that he could only "argue credibility of witnesses." In complete disregard of this admonition counsel again used the evidence for an improper purpose: "They know who was at fault."

At the very least this called for a strong, immediate admonition by the court. Instead the court promised an instruction on the point, plaintiff requested such an instruction, but none was ever given.

We regret to say that from the record before us we can come to only one conclusion: that defense counsel got carried away in his enthusiasm and deliberately argued the evidence concerning the dismissal and the settlement for an improper purpose. (*People* v. *Love,* 56 Cal.2d 720, 730 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809]; *People* v. *Purvis,* 56 Cal.2d 93, 99 [13 Cal.Rptr. 801, 362 P.2d 713].) The case was extremely close. The misconduct was prejudicial.

Two other points involved in the present appeal will arise at the retrial.

The question of the admissibility of the dismissal and settlement will undoubtedly come up again. At the retrial, under the Evidence Code, the court will no longer be confined by the straight jacket of the *Millstein* and *Zelayeta* cases. The following considerations will be applicable:

First of all, we think it is absurd to believe that evidence of money paid to a former plaintiff or a dismissal given to a former defendant necessarily indicates bias when the ex-litigant becomes a witness. The former plaintiff may have been forced by economic circumstances to take a paltry sum, the former defendant may have been coerced into an excessive payment by considerations foreign to the litigation.

██ Relevant evidence includes evidence relevant to the credibility of a witness. (Evid. Code, § 210.) ██ Whether or not evidence tendered to affect the credibility of a witness is admissible depends on a preliminary ruling by the trial court that such evidence would be sufficient to sustain a finding that the witness' credibility is, indeed, affected thereby. (Evid. Code, § 403.) If a reasonable trier of fact may so believe the trial judge must—other considerations aside—admit the evidence even if it would not affect his own evaluation of the witness' credibility. (See comment to Evid. Code, § 403: "Hence, the judge's function on questions of this sort is merely to determine whether there is evidence sufficient to permit a jury to decide the question.") In order to make its

ruling, the court may have to take evidence outside the hearing of the jury. ▊ In a case such as this, obviously the terms of the settlement and attendant circumstances may have a direct bearing on the preliminary question the court must decide.

Yet "relevance is not always enough." (McCormick, *Evidence*, p. 319; *Love* v. *Wolf*, 226 Cal.App.2d 378, 404 [38 Cal.Rptr. 183].) Even if it appears that a witness could have been influenced in his testimony by the payment of money or the obtaining of a dismissal, the party resisting the admission of such evidence may still appeal to the court's discretion to exclude it under section 352 of the code. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Nowhere is the wisdom of our Legislature, the California Law Revision Commission and the framers of the Uniform Rules of Evidence[9] in firmly establishing the principle of trial court discretion more evident that in a situation such as that faced by the trial judge here. He was confronted with two appellate decisions stating a rule of relevance. He may well have thought that when applied to the facts of the present case, *Millstein* and *Zelayeta* were unjust. Yet trial courts do not take appellate decisions lightly. Section 352 tells them that in the field of relevance *stare decisis* takes a back seat to justice.

▊ The only other point which is likely to arise at the retrial is the admissibility of proffered testimony that Burris would testify that about one mile east of the accident "the Parsons automobile made a sudden quick stop without warning in back of him and almost collided with the back of the Burris car. . . ." The offer was rejected. Defendant's reliance on *McGuire* v. *Navarro,* 165 Cal.App.2d 661, 664-665

---

[9]Section 352 of the Evidence Code is an adaptation of rule 45 of the Uniform Rules of Evidence. Rule 45, in turn, is based on section 303 of the American Law Institute's Model Code of Evidence. There is no need to discuss the question of the extent to which section 352 changed preexisting California law. (See 6 Cal. Law Revision Com. Rep. 639-644.) A study of civil cases such as *Martin* v. *Pacific Gas & Elec. Co.,* 203 Cal. 291, 299 [264 P. 246]; *Mohn* v. *Tingley,* 191 Cal. 470, 491-492 [217 P. 733] and *Adkins* v. *Brett,* 184 Cal. 252, 258-259 [193 P. 251] and criminal cases such as *People* v. *Ford,* 60 Cal.2d 772, 801 [36 Cal.Rptr. 620, 388 P.2d 892] shows that while the principle of section 352 was applied in certain situations, it never did receive across the board recognition.

[332 P.2d 361] is justified. As the many cases collected in the annotation "Evidence — Prior Manner of Driving," 46 A.L.R.2d 9, demonstrate, the admissibility of evidence of this nature must, to a large extent, be left to the discretion of the trial court.

The judgment is reversed.

Hufstedler, J., and Stephens, J., concurred.