[Civ. No. 30133. First Dist., Div. One. Apr. 12, 1973.]

MYRA S. TOBLER et al., Plaintiffs and Appellants, v.
CHARLOTTE EDDA CHAPMAN et al., Defendants and Respondents.

## Counsel

Rawles, Golden, Hinkle & Boyle, Rawles, Nelson, Golden & Hinkle, Rawles, Golden, Hinkle & Finnegan, Thomas J. Boyle, John Golden and Richard C. Burton for Plaintiffs and Appellants.

Bell, Cox & Mannon and Conrad L. Cox for Defendants and Respondents.

## Opinion

**SIMS, J.**—Plaintiffs, a couple and their two minor children, have appealed from a judgment entered on a verdict in favor of the defendants Chapman in an action in which they sought to recover for personal injuries suffered in an automobile accident involving vehicles driven by Mr. Tobler, Mrs. Chapman and a third vehicle driven by a Mrs. Drumm. The action was dismissed as to the Drumms after the taking of all the evidence, but before counsel had argued the case. The plaintiffs contend that the trial court erred in denying their motion for a mistrial following alleged prejudicial misconduct by the attorney for the Chapmans, and in refusing to give plaintiffs' proposed instructions on res ipsa loquitur.

It is concluded that the remarks of which complaint is made do not constitute prejudicial misconduct necessitating a new trial, and that although the doctrine of res ipsa loquitur may have been applicable to the case on a conditional basis, there was no prejudicial error in refusing to instruct on that subject because under the circumstances of the case the jury must have accepted the defendants' exculpatory explanation of the accident.

On July 9, 1970, Iren and Myra Tobler, along with their sons Rex and Dale, were traveling south on Highway 101 after having visited their married daughter in Brookings, Oregon. At a point seven miles north of Laytonville, California, where Highway 101 runs through a mountainous region, their automobile was struck head-on by the Chapmans' car causing injuries to all the Toblers.[1]

At the scene of the accident Highway 101 consists of a south and northbound lane divided by a center line consisting of a series of white painted dashes. Parallel to the center line, and approximately 11½ to 12 feet away from it at each side of the road, is a solid white "fog" line. There is then approximately one and one-half to two

---

[1]Mrs. Tobler suffered a broken wrist, a black eye, a concussion, and badly damaged and bruised legs from her ankles to her knees. Mr. Tobler suffered multiple rib fractures, acute traumatic hernia, internal bleeding, and respiratory difficulties caused by the other injuries. Injuries to the sons were evidently minimal.

feet of asphalt beyond the fog line before the shoulder of the road is reached. There is also a turnout area for the northbound lane, which is preceded by a highway sign one-quarter mile to the south reading: "Turn-out: One Quarter Mile," and which is marked at the point of turning by a standard highway sign reading "Turn-out." This turnout, which was approximately 500 feet in length, began at a point, then gradually widened to a maximum width of 12 feet, and then narrowed to nothing again at the place where it turned back into the highway. The turnout was paved, but it was not as smooth or regular as the north and southbound lanes.

The detailed facts of the accident come mainly from the testimony of the Chapmans and the investigating officer as the Toblers were evidently hit before they were aware of what was happening[2] and the Drumms, who were residents of Florida, did not appear to testify at the trial. The Drumms, with Mrs. Drumm driving, were in a 1969 Chrysler, towing a 1970 Airstream trailer north on 101. Mrs. Chapman testified that she and her husband had been following the Drumms for about 30 miles at a speed of 30 to 35 miles per hour when she saw a sign that said "Slower Traffic Keep to the Right" and thought that if Mrs. Drumm pulled over, she would pass. Mrs. Chapman saw Mrs. Drumm put on her right turn signal and pull over into the turnout area, which Mrs. Chapman charac-terized at trial as a passing or slower traffic lane. Once the car and trailer were completely in the turnout area, Mrs. Chapman began to pass.

According to Mrs. Chapman, she began passing without crossing into the southbound lane. As she did so, the Drumm car and trailer, which had kept on moving, started back into the northbound lane, just as the rear of the Chapmans' car had cleared the front of the trailer. Approximately one second later the left front of the trailer bumped the right rear of the Chapmans' car and pushed it over into the other lane of traffic where it hit the Tobler car. The uncontradicted evidence is that the Toblers' car was completely within its southbound lane.

Mrs. Chapman stated that she had not sounded her horn when she started to pass, and she did not remember what she did when she saw the trailer moving back into her lane. She also claimed she had first seen the Tobler car while in the act of passing, and before the trailer started moving back into her lane. According to her, Mrs. Drumm told her after the accident that the Drumm car and trailer were pulled over "to pick up steam or get more speed." On cross-examination Mrs. Chapman said that

[2]Iren Tobler, e.g., testified that he was driving his car and had no recollection of the accident other than following three or four cars at a distance of 75 to 100 feet and being hit by another car.

the Drumms' pulling over had helped her see the road ahead of her and also admitted that she had said in a prior statement that she could see the Tobler vehicle before Mrs. Drumm pulled over.

The accident was investigated by Officer Wayne F. Coon of the California Highway Patrol who had been assigned to the general area for 12 or 13 years. He testified that the left front of the Toblers' 1966 Ford Sedan and the left front of the Chapmans' 1968 Oldsmobile were damaged extensively as was the left front of the Drumms' trailer. He spoke also of the account of the accident Mrs. Chapman gave him after it occurred, and this evidence corroborated her trial testimony. He also testified as to statements Mrs. Drumm made to him, but these were admitted only against the Drumms.

Officer Coon said he found no skid marks at the scene of the accident although he did find gouge marks on the highway, which he was able to trace to the left front of the Chapman vehicle. Even with this evidence, he could not fix the exact point of impact between either the Chapman car and the Tobler car or between the Chapman car and the Drumm trailer. Coon stated that in his opinion the scene of the accident was an unsafe place for a vehicle to attempt to pass a car of approximately 16 to 18 feet in length (the average length of a car) when it was pulling a trailer of approximately 20 to 22 feet in length (as was the Drumms' trailer). This is because the distance that the driver of the passing automobile could see is too short to determine if the road is clear due to the fact there is a curve in the road north of the turnout area. Additionally, due to the fact the turnout begins narrowing into the northbound lane, a car trying to pass another automobile would have to move out into the southbound lane.

On the other hand, he testified that the purpose of the turnout area was for slow moving vehicles to pull out and let other vehicles proceed by and that if a vehicle moved into the turnout area, a passing car in the northbound lane would be in proper position and such a pass would not be an improper one.

I

When the jury was first convened, plaintiffs were presenting a case against two sets of defendants, the Drumms and the Chapmans, and plaintiffs' counsel told the jury in his opening statement that this collision occurred "through the combined fault of both the driver of the Drumm and of the Chapman vehicles." On the morning of the fourth trial day,

out of the jury's presence, plaintiffs' counsel announced that the action was dismissed as to the Drumms, but as to them alone. Counsel for the Drumms then stated: "At this point I reluctantly leave the case. I had my argument all prepared."

The court then asked the attorney how he should handle the dismissal and plaintiffs' attorney said: "I would request simply that [you say] the Drumms have been dismissed from the case, that the case has been dismissed as to the Drumms period." The Chapmans' counsel said that would be fine with him. Thus, when the jury returned, the court simply announced: "Ladies and Gentlemen, the case has been dismissed as to the Drumms, represented by Mr. Cook."

Subsequently, in his argument to the jury, plaintiffs' attorney was directing the jury's attention to various Vehicle Code sections bearing on the case and said of one of them: "This one I was about to read to you is no longer applicable since the Drumms aren't in this case any longer." This is the only reference he made to the Drumms' dismissal.

Defendants' counsel then gave his argument and said he would begin with the issue of damages but was not particularly prepared on this matter since Mr. Cook had been going to deal with it. He then stated: "However, when the case was dismissed, *when peace had been made between the Toblers and the Drumms,* it then became my duty." (Italics added.) Appellant's counsel objected to the statement, claiming it was prejudicial and asked that the jury be instructed that there was no evidence that peace had been made between the Drumms and the Toblers. The court then said: "I will remind you once again, and the Court will instruct you later that any statement made by counsel is not evidence. And there is no evidence as to what was discussed." Defendants' counsel then proceeded by saying: "When the case was dismissed as to the Drumms this morning, it then became my duty to discuss the damages with you."

At the next recess, certain proceedings were held in chambers as follows: "[Plaintiffs' counsel]: Your Honor, I move for a mistrial. And this being the first opportunity I could make the motion out of the presence of the jury, I move now, and I cite for the mistrial [counsel's] statement to the jury, telling them the Toblers have made their peace with the Drumms; that the reasonable effect of that language is to tell the jury the Toblers have settled with the Drumms.

"This comment is extremely prejudicial to the Toblers, because the evidence of the Chapmans' liability may be considered by the jury to be less strong than the evidence of the Drumm's liability, and the jury may

very well feel if the plaintiffs have settled with the more responsible party Drumms, they then are not going to allow the plaintiffs to recover from the less responsibility [sic] party Chapmans. I feel it is very prejudicial, and for that reason, I move for a mistrial.

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"[Defendants' counsel]: That is a fair statement. They dismissed as to the Drumms this morning. I don't know what particular inference you take. I used the expression 'made their peace with them.' I think that is a fairer statement than the fact that they have been dismissed, your Honor.

"THE COURT: All right. I made the statement at the time to the jury that a statement of counsel is not evidence, and I will emphasize that in the instructions. I will deny the motion for mistrial at this time, as I stated at the time."

Following the denial of the mistrial motion, argument resumed and defendants' counsel made the following statement: "Now simply because there was a clear case of liability as to the Drumms doesn't mean that the plaintiff has a liability as to every defendant in this situation." No objection was made to this statement.

No further comments of this nature were made in the closing arguments, and in his instructions to the jury, the court stated: "You must not consider as evidence any statement of counsel made during the trial. . . ." He did not, however, give any specific instructions regarding the complained of statement, "Peace had been made between the Toblers and the Drumms."

In plaintiffs' motion for a new trial they set forth as one of the grounds the allegedly improper denial of their mistrial motion. The court denied that motion.

Insofar as the statement "when peace had been made between the Toblers and the Drumms" was merely a metaphorical reference to the fact that there was a termination of the conflict between the plaintiffs and those defendants, which had been manifest to the jury since the time they were empanelled, from plaintiffs' attorney's opening statement and from the Drumms' attorney's participation in the case, it was a fair comment[3] on the state of the case as it existed after the Drumms were

[3]Defendant counsel's insistence that the statement was "a fair statement" and that he thought "it is a fairer statement than the fact that they have been dismissed," as noted by plaintiffs, has nothing to do with any privilege under the law of defamation. (Cf. *Maidman* v. *Jewish Publications, Inc.* (1960) 54 Cal.2d 643, 651-652 [7 Cal.Rptr. 617, 355 P.2d 265, 87 A.L.R.2d 439].) It may be noted, however, that the

dismissed. When viewed in context—the remaining defendants' attorney's explanation of his failure to be adequately prepared to argue the matter of damages—it is reasonable to assume that the jurors so construed it. In fact it is inconsistent for defendants to have asserted, as plaintiffs infer from the remark, that the plaintiffs have been compensated, and yet at the same time undertake to argue what is a proper amount to allow as damages. It appears that following the remarks complained of, the defendants' attorney argued for 12 pages of the record with respect to the plaintiffs' injuries and damages.

On the other hand, insofar as the statement indicates, that the plaintiffs had received payment or satisfaction from the dismissed defendants it was misconduct. Section 1152 of the Evidence Code provides in pertinent part, "(a) Evidence that a person has, in compromise . . . furnished . . . money . . . to another who . . . claims to have sustained loss or damage . . . is inadmissible to prove his liability for the loss or damage or any part of it." It may be assumed that evidence of any settlement with or payment by the Drumms would have been inadmissible to establish their liability, so the reference would also be improper.

In fact it is well established that under parallel circumstances it is prejudicial misconduct to tell the jury that the injured party has been compensated by another codefendant who has been dismissed from the case *and* that such fact demonstrates that the remaining codefendant is not liable. (See *Shepherd* v. *Walley* (1972) 28 Cal.App.3d 1079, 1083-1084 [105 Cal.Rptr. 387]; *Albrecht* v. *Broughton* (1970) 6 Cal.App.3d 173, 178 [85 Cal.Rptr. 659]; and *Granville* v. *Parsons* (1968) 259 Cal.App.2d 298, 303, 304 [66 Cal.Rptr. 149].) In *Shepherd* v. *Walley, supra*, the offensive language was as follows: " 'Now, Mr. Prowant was formerly a defendant, and he settled with the plaintiff. She has been paid by him and dismissed him from the suit. I think that gives us a pretty good idea of who the plaintiff thinks was responsible and liable. Nothing Mr. Wally did caused this accident and nothing he did should cause you to find him liable.' " (28 Cal.App.3d at p. 1083.) In *Albrecht* v. *Broughton, supra,* the court received evidence of a settlement with a codefendant and permitted both the plaintiff and the remaining codefendant to argue concerning

dismissal at the stage of the proceedings as it occurred in this case, unless further explained, may leave the remaining codefendant in the position that the jury would infer that the claimant and the judge had agreed that the remaining defendant was the sole person who might be liable. In view of the conclusion that there was no prejudicial error in this case, it is unnecessary to pursue that concept. The plaintiffs' attorney did conclude his closing argument by stating, "I want to leave you with the thought that in my view the evidence shows that Mrs. Drumm was quite careless and Mrs. Chapman was somewhat careless, not so careless as Mrs. Drumm. . . ."

the reasons for the settlement. The court held that neither side was entitled to litigate a nonexistent issue.[4] In *Granville* v. *Parsons, supra,* the action before the jury involved only one defendant. In his opening statement counsel for the defendant advised the jury that there had been other defendants, and the court made an inconclusive ruling on plaintiffs' objection. When former defendants were called as witnesses the defendant brought out that they had been dismissed as defendants and had paid the plaintiff in settlement. No admonition or instruction was given to limit the effect of that impeaching testimony. The court ruled on appeal, ". . . from the record before us we can come to only one conclusion: that defense counsel got carried away in his enthusiasm and deliberately argued the evidence concerning the dismissal and the settlement for an improper purpose. [Citations.] The case was extremely close. The misconduct was prejudicial." (259 Cal.App.2d at p. 304.)

In this case, however, the remark was made in a context which at worst left its meaning ambiguous. The jury knew that the action had been dismissed as to the codefendants. There was no attempt to bring out the conditions upon which the dismissal was given or that any sum had been paid to plaintiffs. In fact counsel addressed himself to the sum which would be payable to plaintiffs if his client were held liable. Finally there was a prompt objection and a prompt admonition that they should disregard statements of counsel as evidence, and that there was no evidence of what was discussed in connection with the dismissal of the Drumms. Part of this admonition was repeated in the general instructions. (See BAJI instruction No. 1.02.) Although plaintiffs complain that there was no subsequent elaboration on the misconduct of which complaint was made, it is obvious that any attempt by the court to refer back to that incident, in the absence of a request for an express instruction by plaintiffs, would have been branded as stirring up a sleeping dog.

In the absence of irremedial misconduct, any prejudice is deemed cured by appropriate instructions from the court. (See *Tellefsen* v. *Key System Transit Lines* (1958) 158 Cal.App.2d 243, 246-247 [322 P.2d

---

[4]The court stated, "Respondent seems to claim a vested interest in having the jury made aware of the fact of a settlement and of its amount. No doubt respondent's counsel was correct in believing that it was tactically advantageous for him to be able to bring this information to the jury in a case where the evidence on liability was in sharp conflict and the damages were so severe. There can be no question that it was a great advantage to the defense to be able to let the jury know that appellant's injuries were not wholly uncompensated. But that advantage is not one which a party is *entitled* to enjoy in the absence of any issue in the determination of which the evidence will be relevant and proper for the jury to hear." (6 Cal.App.3d at p. 178.)

469, 67 A.L.R.2d 556]; *Millstein* v. *Spektor* (1957) 153 Cal.App.2d 125, 131-132 [314 P.2d 184]; and *Winchell* v. *Lorenzen* (1954) 123 Cal.App.2d 704, 711 [267 P.2d 398].) Plaintiffs assert that the admonition was ineffective because defendants' counsel persisted in referring to the settlement after the objection was interposed and the admonition was given. (See *Love* v. *Wolf* (1964) 226 Cal.App.2d 378, 392 [38 Cal.Rptr. 183]; and *King* v. *Kaplan* (1949) 94 Cal.App.2d 697, 702 [211 P.2d 578].) In support of this claim they refer to the fact that immediately after the admonition counsel stated, "When the case was dismissed as to the Drumms this morning, it then became my duty to discuss the damages with you." A second reference is to the statement made after the recess in which plaintiffs' motion for a mistrial was denied. Counsel stated, "Now simply because there was a clear case of liability as to the Drumms doesn't mean that the plaintiff has a liability case as to every defendant in this situation."

Neither statement on its face appears to refer to any settlement with the Drumms. If plaintiffs thought they were prejudiced by either statement they should have voiced their objections to the trial court. (See *Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 318 [74 Cal.Rptr. 534, 449 P.2d 750] [cert. den. (1969) 395 U.S. 960 (23 L.Ed.2d 746, 89 S.Ct. 2100)]; and *Horn* v. *Atchison T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 610-611 [39 Cal.Rptr. 721, 394 P.2d 561] [cert. den. (1965) 380 U.S. 909 (13 L.Ed.2d 796, 85 S.Ct. 892)].) The former statement merely stated what was obvious to the jury and what had been told them at plaintiffs' request—the case had been dismissed as to the Drumms. The use of this fact to explain the attorney's lack of preparation on the issue of damages neither added nor detracted to what the jury might improperly speculate to be the cause of that dismissal. In fact, as noted above, the reference to damages implied that the arguing attorney conceded that there was a possibility of liability for his clients. The second statement was clearly addressed to the evidence in the case. The plaintiffs conceded that Mrs. Drumm was "quite careless." (See fn. 3 above.) The fact that a claimant chooses to proceed against one of several alleged tortfeasors cannot preclude the latter from contending that another's negligence was the sole proximate cause of the injuries to the claimant. (*Perez* v. *Crocker* (1927) 86 Cal.App. 288, 291-292 [260 P. 838].) The defendant is entitled to advance all arguments justified by the record. (See *King* v. *Kaplan, supra,* 94 Cal.App.2d 697, 699.)

Finally, it may be noted that the trial court which conducted the proceedings has twice reviewed and denied plaintiffs' claim of prejudicial

error.[5] In *Walling v. Kimball* (1941) 17 Cal.2d 364 [110 P.2d 58] the court stated, "The entire controversy and every issue here set up as misconduct were before the trial court upon the motions for new trial and the affidavits filed by respective counsel in support thereof and in opposition thereto. Upon the issues thus raised in the trial court, the court decided that there had been no prejudicial misconduct, and this was a finding of fact which the trial court was justified in making when the motions for new trial were denied, for all of the matters of which complaint is made also took place in the presence of the trial judge, who was in the best position to observe the demeanor of the parties and to gauge any possible effect it might have had upon the jury." (17 Cal.2d at pp. 368-369. See also *LaFargue v. United Railroads* (1920) 183 Cal. 720, 724-725 [192 P. 158]; *Pacific Gas & Elec. Co. v. Spencer* (1960) 181 Cal.App.2d 171, 172-173 [5 Cal.Rptr. 75]; *Millstein v. Spektor, supra,* 153 Cal.App.2d 125, 131-132; and *Brown v. McCuan* (1942) 56 Cal.App.2d 35, 40-42 [132 P.2d 838].)

Plaintiffs assert that the foregoing principles cannot be considered when the misconduct in question was deliberate. (See *Carlston v. Shenson* (1941) 47 Cal.App.2d 52, 61 [117 P.2d 408].) The statement made by defendants' counsel in this case was undoubtedly deliberately phrased and uttered, but in context it does not appear to be a deliberate or successful effort to argue that the plaintiffs have been paid off so the jury should exonerate his client. It was clearly curable and cured by the admonition.

In *Wilkinson v. Southern Pacific Co.* (1964) 224 Cal.App.2d 478 [36 Cal.Rptr. 689] the court stated, "If, on appeal from the judgment, the appellate court gives weight to a lower court order denying a new trial, interfering only for an abuse of discretion, then the appellate court abdicates—or at least seriously dilutes—its constitutional obligation." (224 Cal.App.2d at p. 483. See also *Deward v. Clough* (1966) 245 Cal.App.2d 439, 445 [54 Cal.Rptr. 68]; and cf. *Pacific Gas & Elec. Co. v. Spencer, supra,* 181 Cal.App.2d 171, 172.) It is unnecessary to determine to what

---

[5]Plaintiffs contend that the record, which indicates that defense counsel was unwilling to go through with a settlement offer of $17,000, which he had made prior to the argument, despite plaintiffs' belated attempt to accept the offer while the jury was deliberating, demonstrates that the disputed remarks were considered effective by defense counsel. That circumstance is not necessarily indicative of the fact defense counsel felt rather confident of the verdict because of having impressed the jury with his statements indicating a settlement. He may have been confident of the verdict for many other reasons, and this court cannot engage in speculation as to why he felt such confidence. He may just as well have felt, e.g., that plaintiffs' willingness to accept an offer while the jury was out was an indication of weakness of their case.

extent this last principle undermines the philosophy expressed in *Walling* v. *Kimball, supra,* and other earlier 'cases. ▆▆▆ Whether considered in the light of the lower court's rulings on the motion for mistrial and motion for new trial, or independently on the written record above, the remarks complained of, when viewed with the court's admonition, do not constitute prejudicial misconduct which will necessitate reversal of the judgment.

## II

Plaintiffs requested the court to give instructions numbers 4.00[6] and 4.02[7] from California Jury Instructions (BAJI) (5th ed., 1969). They contend the trial court erred in refusing to instruct the jury on the issue of res ipsa loquitur. The defendants assert that there was no error in refusing to give the requested instructions because it is improper to

---

[6]BAJI No. 4.00 provided and provides: *"Res Ipsa Loquitur—Necessary Conditions for Application* [¶] On the issue of negligence, one of the questions for you to decide in this case is whether the [accident] [injury] involved occurred under the following conditions: [¶] First, that it is the kind of [accident] [injury] which ordinarily does not occur in the absence of someone's negligence; [¶] Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant [originally, and which was not mishandled or otherwise changed after defendant relinquished control]; and [¶] Third, that the [accident] [injury] was not due to any voluntary action or contribution on the part of the plaintiff which was the responsible cause of his injury. [¶] If, and only in the event that you should find all these conditions to exist, you are instructed as follows: . . ."

[7]BAJI No. 4.02 formerly provided: *"Res Ipsa Loquitur—Where Only a Permissible Inference of Negligence* [¶] From the happening of the [accident] [injury] involved in this case, an inference may be drawn that a [proximate] [legal] cause of the occurrence was some negligent conduct on the part of the defendant. [¶] If you draw such inference of defendant's negligence then, unless there is contrary evidence sufficient to meet or balance it, you will find in accordance with the inference. [¶] In order to meet or balance such an inference of negligence, the evidence must show either (1) a definite cause for the accident not attributable to any negligence of defendant, or (2) such care by defendant that leads you to conclude that the accident did not happen because of defendant's lack of care but was due to some other cause, although the exact cause may be unknown. If there is such sufficient contrary evidence you shall not find merely from the happening of the accident that a [proximate] [legal] cause of the occurrence was some negligent conduct on the part of the defendant."

With the adoption of Evidence Code section 646 (Stats. 1970, ch. 69, § 1, p. 83, effective Nov. 23, 1970) BAJI No. 4.02 (1970 rev.) was revised to read, as follows: "From the happening of the [accident] [injury] involved in this case, you may draw an inference that a [proximate] [legal] cause of the occurrence was some negligent conduct on the part of the defendant. [¶] However, you shall not find that a [proximate] [legal] cause of the occurrence was some negligent conduct on the part of the defendant unless you believe, after weighing all the evidence in the case and drawing such inferences therefrom as you believe are warranted, that it is more probable than not that the occurrence was caused by some negligent conduct on the part of the defendant." (This revision was announced Nov. 12, 1970 but was not formally published until included in pocket parts dated August 1971.)

give such instructions when the defendant driver did not have exclusive control of the instrumentality causing the accident, and because the instructions were erroneous in that in March 1971, when the instructions were requested and the jury was instructed, Instruction No. 4.02 had been rendered improper by an amendment to the Evidence Code. (See fn. 7 above.) Defendants also assert that in any event there was no prejudice because of the failure to give the instruction since the other instructions to the jury shifted to the defendants the burden of proof to explain the prima facie case of negligence which arose because their vehicle was on the wrong side of the road at the time of the collision, and the jury, by its verdict, accepted that evidence and absolved defendants of responsibility.

— A —

The situation here parallels to a certain extent that in *Barrera* v. *De La Torre* (1957) 48 Cal.2d 166 [308 P.2d 724]. There the court observed, "The parties first are in dispute as to whether or not the doctrine of res ipsa loquitur is applicable here. They agree that the doctrine has these three conditions: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must have been caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. [Citations.] Obviously in this case conditions (1) and (3) were met. Defendant claims that condition (2) was not met because when the other automobile struck his automobile in the intersection, his automobile went out of his control, jumped the curb and crashed into plaintiffs' house. The car then being out of his control, defendant contends that he cannot be held responsible for plaintiffs' damages under that doctrine. [Citations.] This argument assumes that the jury was required to find that the accident happened exactly as defendant testified. On the other hand, plaintiffs claim that defendant's explanation was highly improbable, being based upon an alleged collision between his and a 'phantom car' with the consequent wresting of his car from his control and its striking plaintiffs' house. So far as they are concerned, plaintiffs claim their damages were occasioned by but one car, which was that of the defendant, and therefore the res ipsa loquitur doctrine was applicable." (48 Cal.2d at pp. 169-170.)

Here plaintiffs do not claim that the Drumm car was a phantom car but they claim that they are entitled to an inference that the defendant driver was negligent in getting into a position where her car would be struck by another, or alternatively that, as in the case quoted, she did not control her car properly after finding herself in a position of peril (see

*Godfrey* v. *Brown* (1934) 220 Cal. 57, 67 [29 P.2d 165, 93 A.L.R. 1092]; *Linberg* v. *Stanto* (1931) 211 Cal. 771, 775 [297 P. 9, 75 A.L.R. 555]; *Brandes* v. *Rucker-Fuller Desk Co.* (1929) 102 Cal.App. 221, 225-226 [282 P. 1009]; and *Smith* v. *Hollander* (1927) 85 Cal.App. 535, 539 [259 P. 958]). In *Barrera* the court concluded: "But regardless of whether there was or was not a two-car collision in line with defendant's account, it could not be said as a matter of law that defendant thereby lost control of his automobile so as to render the doctrine inapplicable. Rather these were all matters for the jury to weigh in the light of the required conditions, and an appropriate instruction concerning the doctrine would have been proper." (48 Cal.2d at p. 170.) In *Barrera,* however, no instruction on res ipsa loquitur, either conditional or absolute, as a matter of law, had been offered, and it was only necessary for the decision to determine that "there was evidence that two instrumentalities were involved in the accident, and it was questionable whether the conditions of the res ipsa loquitur doctrine were satisfied." (*Id.,* at p. 171.)

The question of the application of the doctrine of res ipsa loquitur in the event of a collision between two moving vehicles is reviewed by the late Professor Prosser as follows: "All courts are agreed that the mere fact of a collision of two automobiles gives rise to no inference of negligence against either driver in an action brought by the other. The great majority of the decisions reach the same conclusion where the action is brought by a third party, such as a bystander, injured by the collision, on the ground that neither driver is in exclusive control of the situation. It is only where one vehicle is stationary, or its driver's fault is eliminated by some other specific evidence, that res ipsa loquitur can apply against the other. . . .

"The question may legitimately be raised, however, whether all this is the reasonable and logical approach. When moving vehicles collide on the highway, whether or not one of them is a carrier, is there not a reasonable inference, based merely upon the known probabilities, that not one but *both* drivers have been negligent? Certainly there is an inference that due care has not been used by someone, as is demonstrated by the cases where one defendant has operated both vehicles. It is not a question of assigning this fault to one or the other, but of recognizing that, more probably than not, careful drivers do not have collisions even with careless ones. If the driver collides with a stationary object, an inference of negligence arises; why any other conclusion when he collides with a moving object which proper care requires him to look out for and avoid? There is a little authority to this effect; but it cannot be pretended that the argument has made much headway since it was first advanced." (Prosser, Torts (4th ed.

1971) § 39, pp. 221-223, fns. omitted. See also McCoid, *Multiple Defendants* (1955) 7 Stan.L.Rev. 480, 482-498.)

Defendants Chapman assert that the instruction was properly refused because although the first requisite was satisfied—plaintiffs on their own side of the road would not in the ordinary course of things have been struck in the absence of someone's negligence—it was not reasonably probable that the negligence was that of Mrs. Chapman as distinguished from the negligence of Mrs. Drumm. (See *Di Mare* v. *Cresci* (1962) 58 Cal.2d 292, 299 [23 Cal.Rptr. 772, 373 P.2d 860]; *Faulk* v. *Soberanes* (1961) 56 Cal.2d 466, 470 [14 Cal.Rptr. 545, 363 P.2d 593]; *Guerra* v. *Handlery Hotels, Inc.* (1959) 53 Cal.2d 266, 271 [1 Cal.Rptr. 330, 347 P.2d 674]; *Phillips* v. *Noble* (1958) 50 Cal.2d 163, 167 [323 P.2d 385]; *Zentz* v. *Coca Cola Bottling Co.* (1952) 39 Cal.2d 436, 443-444 [247 P.2d 344]; *La Porte* v. *Houston* (1948) 33 Cal.2d 167, 170 [199 P.2d 665]; *Olson* v. *Whitthorne & Swan* (1928) 203 Cal. 206, 208-209 [263 P. 518, 58 A.L.R. 129]; *Harrison* v. *Sutter Street Ry. Co.* (1901) 134 Cal. 549, 551-552 [66 P. 787]; *Gotcher* v. *Metcalf* (1970) 6 Cal. App.3d 96, 102-103 [85 Cal.Rptr. 566]; *Carrick* v. *Pound* (1969) 276 Cal.App.2d 689, 693 [81 Cal.Rptr. 234]; *Cordova* v. *Ford* (1966) 246 Cal.App.2d 180, 185-187 [54 Cal.Rptr. 508]; *Getas* v. *Hook* (1965) 236 Cal.App.2d 705, 716 [46 Cal.Rptr. 249]; and *Gerber* v. *Faber* (1942) 54 Cal.App.2d 674, 683-684 [129 P.2d 485].) This oversimplifies the case. The probabilities might be equal in an action between the Chapmans and the Drumms, or even between a passenger in one of those vehicles and the driver of the other. (See *Faulk* v. *Soberanes, supra,* 56 Cal.2d 466, 470; *Phillips* v. *Noble, supra,* 50 Cal.2d 163, 167; *Harrison* v. *Sutter Street Ry. Co., supra,* 134 Cal. 549, 551; *Gotcher* v. *Metcalf, supra,* 6 Cal. App.3d 96, 103; and *Cordova* v. *Ford, supra,* 246 Cal.App.2d 180, 185.) Here on the other hand, the possibilities are threefold: (1) that the collision resulted solely from the negligence of Mrs. Chapman; (2) that the collision resulted solely from the negligence of Mrs. Drumm; and (3) that the collision resulted from the concurrent negligence of both of those drivers. With such a probability it would not be unfair, as pointed out in *Barrera* to permit the jury to weigh the inference of negligence along with the evidence produced by Mrs. Chapman in explanation. Plaintiffs, as admittedly innocent bystanders, are entitled to have the benefit of having all of the other actors explain their conduct. (See *Seneris* v. *Haas* (1955) 45 Cal.2d 811, 824-825 [291 P.2d 915, 53 A.L.R.2d 124]; *Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 445-446; *Godfrey* v. *Brown, supra,* 220 Cal. 57, 66-67; *Linberg* v. *Stanto, supra,* 211 Cal. 771, 774-775; *Gotcher* v. *Metcalf, supra,* Stone, P. J., concurring, 6 Cal.App.3d at p. 105, and

Gargano, J., dissenting at pp. 107-111; *Fraser* v. *Sprague* (1969) 270 Cal.App.2d 736, 746-747 [76 Cal.Rptr. 37]; *Hudspeth* v. *Jaurequi* (1965) 234 Cal.App.2d 526, 528 [44 Cal.Rptr. 428]; and *Poulsen* v. *Charlton* (1964) 224 Cal.App.2d 262, 268 [36 Cal.Rptr. 347].)

It is further urged that because the action was dismissed as to the Drumms, the Chapmans should not have the sole burden of explaining what occurred. In *Faulk* v. *Soberanes, supra,* the court observed, "The application of the doctrine in the present case depended upon a determination of factual issues and was not compelled as a matter of law. There was evidence that another car was in defendant's lane, and the jury could find that there was no greater probability that the accident was due to defendant's driving than that it was due to the conduct of the other driver. Even if we assume that the doctrine of res ipsa loquitur might be used in some cases to require an explanation from both drivers with respect to accidents involving two moving vehicles, defendant would be placed at a serious disadvantage were she required to exculpate herself in order to avoid liability when the other driver, who may have been equally or solely negligent, is not before the court. (Cf. *Phillips* v. *Noble,* 50 Cal.2d 163, 167. . . .)" (56 Cal.2d at p. 470. See in addition to the case cited, *Gotcher* v. *Metcalf, supra,* 6 Cal.App.3d 95, 103-104, and Stone, P. J., concurring at p. 105. Cf. *Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 601-602 [94 Cal.Rptr. 200].)

The statement in *Faulk* which Stone, P. J. abridged as: "To apply res ipsa loquitur piecemeal in cases of concurring causation seems to me to place an unfair burden on the one party who is brought to trial" (6 Cal. App.3d at p. 105), does not bear analysis. In this case, if it be assumed that the plaintiffs were entitled to a res ipsa loquitur instruction as against both the Chapmans and the Drumms, it is difficult to understand how the Chapmans' burden of meeting or balancing the inference of negligence was increased by the dismissal of the case as to the Drumms. In fact unless the defendant in control of the other instrumentality admits his negligence, it woud appear that the concededly guiltless claimant would be in a more advantageous position if he has each asserting that the other has been negligent, than if he has one free to exculpate himself by throwing the blame on an absent participant.[8]

---

[8]The concept of the disadvantage to one defendant apparently stems from *Phillips* v. *Noble, supra,* 50 Cal.2d 163, a guest case, where the plaintiff sued the driver of the car in which he was riding and the driver of the second car involved in the collision in which he received his injuries. No instruction on res ipsa loquitur was given or requested. The issue was whether the doctrine was applicable as a matter of law so as to render prejudicially erroneous the giving of a "mere fact" instruction.

In *Faulk* v. *Soberanes, supra,* the court stated as an alternate ground of decision: "The instruction offered by plaintiff erroneously states that the inference of negligence arises as a matter of law. The defect was not cured by the fact that the instruction recognized that the inference may be rebutted by showing that defendant exercised ordinary care or that the accident occurred without being proximately caused by any failure of duty on her part. To avoid the application of the doctrine of res ipsa loquitur defendant was not required to show that the accident was not caused by negligence on her part; the doctrine, as we have seen, was not applicable if the jury found that there was no greater probability that the accident was due to her driving than to the conduct of another driver. A trial judge is not required to correct requested instructions which are incomplete or erroneous [citations], and the refusal of the instruction did not constitute error." (56 Cal.2d at pp. 470-471.)

That analysis indicates that a conditional instruction would have been proper, and does not overrule *Barrera* v. *De La Torre,* where the court stated that under similar circumstances "an appropriate instruction concerning the doctrine would have been proper." (48 Cal.2d at p. 170.) The instruction offered proposed to advise the jury that before it could draw any inference of·the negligence of the defendant it would have to find inter alia that the accident "was caused by an agency or instrumentality in the exclusive control of the defendant originally and which was not mishandled or otherwise changed after defendant relinquished control." (See fn. 6 above.) Although the standard instruction as so drafted is not a model of clarity for application in a case such as this where there may have been concurrent negligence, any deficiency in that regard could only redound to the benefit of the defendant.

■ It is therefore concluded that the trial court erred in refusing to give an instruction which would have permitted the jury to draw an inference that Mrs. Chapman was negligent and that her negligence was either

---

The court observed, "Insofar as [the driver of the second car] is concerned, there can be no justification for applying the doctrine as a matter of law against him alone. Assuming that the doctrine might be used in some collision cases to require an explanation from both defendants, [the driver of the second car] would be placed at a serious disadvantage if he were required as a matter of law to exculpate himself in order to avoid liability when [the plaintiff's driver], who may have been equally or solely negligent, would not be required to do so if plaintiff were considered his guest." (50 Cal.2d at p. 167.) The case does not indicate that it would be improper to apply a conditional instruction to each of two drivers whose concurrent acts or omissions resulted in injuries to an innocent bystander, whether they be sued jointly or severally. (Cf. *McFarland* v. *Booker* (1967) 250 Cal.App.2d 402, 412 [58 Cal. Rptr. 417].)

a sole or concurrent cause of the collision. (See *Kerr* v. *Bock* (1971) 5 Cal.3d 321, 325 [95 Cal.Rptr. 788, 486 P.2d 684]; *Tomei* v. *Henning* (1967) 67 Cal.2d 319, 323 [62 Cal.Rptr. 9, 431 P.2d 633]; *Keena* v. *Scales* (1964) 61 Cal.2d 779, 783 [40 Cal.Rptr. 65, 394 P.2d 809]; *Davis* v. *Memorial Hospital* (1962) 58 Cal.2d 815, 819 [26 Cal.Rptr. 633, 376 P.2d 561]; *Wolfsmith* v. *Marsh* (1959) 51 Cal.2d 832, 835-836 [337 P.2d 70, 82 A.L.R.2d 1257]; *Seneris* v. *Haas, supra,* 45 Cal.2d 811, 827; *Springer* v. *Reimers* (1970) 4 Cal.App.3d 325, 334 [84 Cal.Rptr. 486]; *Fraser* v. *Sprague, supra,* 270 Cal.App.2d 736, 743-744; *Hudspeth* v. *Jaurequi, supra,* 234 Cal.App.2d 526, 528; and *Hansen* v. *Matich Corporation* (1965) 234 Cal.App.2d 129, 135 [44 Cal.Rptr. 149].)

— B —

The amendment to the Evidence Code (see fn. 7 above) "is designed to clarify the manner in which the doctrine of res ipsa loquitur functions under the provisions of the Evidence Code relating to presumptions." (Law Revision Com. comment to § 646; see Deering's Evid. Code Ann., 1972 pocket supp., p. 53.) "Section 646 provides that the doctrine of res ipsa loquitur is a presumption affecting the burden of producing evidence." (*Id.* See Evid. Code, §§ 601, 603, 604 and 630-646.) Under the amendment the court, if requested to instruct the jury on the doctrine, "shall, instruct the jury to the effect that: . . . (2) The jury shall not find that a proximate cause of the occurrence was some negligent conduct on the part of the defendant *unless the jury believes,* after weighing all the evidence in the case and drawing such inferences therefrom as the jury believes are warranted, *that it is more probable than not that the occurrence was caused by some negligent conduct on the part of the defendant."* (Evid. Code, § 646, subd. (c)(2), part, italics added.)

Defendants contend that the instruction requested by plaintiffs was erroneous because it did not include the language prescribed by the statute. They assert that BAJI instruction No. 4.02, prior to its revision, required the defendant driver to prove "a definite cause for the accident not attributable to any negligence of defendant, or such care by defendant that leads [defendant] to conclude that the accident did not happen because of defendant's lack of care but was due to some other cause, . . ." (See BAJI No. 4.02, fn. 7 above.) The former instruction did not ostensibly shift the burden of proof. It only required the defendant "to meet or balance" the inference of negligence. Nevertheless, the last paragraph of the instruction may be deemed to suggest that the burden was shifted to the defendant to not merely produce evidence to show, but to prove by a preponderance of the evidence, one of the facts defined as necessary

to rebut the inference. The new legislatively mandated instruction appears to be more favorable to the defendant.

In *Faulk* v. *Soberanes, supra,* the court found there was no error in refusing an instruction that res ipsa loquitur was applicable as a matter of law, when at best a conditional instruction was warranted. The court stated, "A trial judge is not required to correct requested instructions which are incomplete or erroneous (*Tossman* v. *Newman,* 37 Cal.2d 522, 525 . . .; see *Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 158 . . .), and the refusal of the instruction did not constitute error." (56 Cal.2d at pp. 470-471. See also *Switzer* v. *State of California* (1969) 269 Cal.App.2d 627, 635-636 [75 Cal.Rptr. 371]; *McFarland* v. *Booker* (1967) 250 Cal.App.2d 402, 412 [58 Cal.Rptr. 417]; and *Getas* v. *Hook, supra,* 236 Cal.App.2d 705, 717.)

On the other hand in *Davis* v. *Memorial Hospital, supra,* the court found it was reversible error to fail to give a requested conditional res ipsa loquitur instruction. The opinion states, "More specific language in regard to that factual issue would have been desirable, but it is unlikely that the jury would have been misled by the requested instructions, and the trial court did not refuse them because of a lack of specificity but because of its mistaken belief that res ipsa loquitur could not apply under any view of the evidence." (58 Cal.2d at p. 819. See also *Keena* v. *Scales, supra,* 61 Cal.2d 779, 785; *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 157-158 [65 Cal.Rptr. 406, 28 A.L.R.3d 368]; and *Hudspeth* v. *Jauregui, supra,* 234 Cal.App.2d 526, 528.) In this case, in discussing the instructions, the trial judge indicated, "I have also considered this question of giving the res ipsa instructions, and I am going to deny that request. I don't think this is a situation for those." It, therefore, appears that it would have been futile to amend the instructions and the principle expressed in *Davis* should apply.

— C —

It is therefore necessary to consider whether the failure to instruct on the doctrine of res ipsa loquitur was prejudicial. The jury was fully instructed on the general principles of liability for negligence (see BAJI Nos. 3.00, 3.10, 3.11, 3.12, 3.13, 3.14 and 3.15), proximate cause (BAJI No. 3.75), concurring causes (BAJI No. 3.77) and the duty of one in imminent peril (BAJI No. 4.40). The court also gave general instructions on the duty of the driver of a vehicle on a public highway (BAJI No. 5.00), and on right-of-way (BAJI Nos. 5.10 and 5.11). The judge read the provisions of section 22107 of the Vehicle Code and followed it with a general

instruction on turning a vehicle (BAJI No. 5.20). The court directed the juror's attention to provisions of the Vehicle Code found in the following sections: 21650, subdivision (a) [right side of roadway]; 21662 [mountain driving]; 21750 [overtake and pass to left]; 21751 [passing without sufficient clearance]; and 21752, subdivision (a) [when driving on the left prohibited].[9] Immediately following the reading of the foregoing excerpts the judge charged the jury in the language of BAJI No. 3.45 as follows: "If you find that a party to this action violated any of the statutes just read to you and that such violation was a proximate cause of injury to another or to himself, you will find that such violation is negligence. Unless such [party] proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the law."

Plaintiffs assert that the fact that the jury's attention was directed to the possibility of numerous possible specific acts of negligence does not render the failure to give the requested instruction nonprejudicial. In *Di Mare* v. *Cresci, supra,* 58 Cal.2d 292 it was contended that the court erred in giving an instruction that res ipsa loquitur applied as a matter of law against a defendant who was responsible for the construction, maintenance, or inspection of the defective premises which caused the injury, because the plaintiff offered proof as to the nature of the defect. The court stated, "The introduction of evidence of specific acts of negligence does not deprive the plaintiff of the benefit of the doctrine unless the facts as to the cause of the accident and the care exercised by the defendant are shown as a matter of law thus eliminating any justification for resort to the inference of negligence. [Citations.]" (58 Cal.2d at p. 299. See also *Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 385 [93 Cal.Rptr. 769, 482 P.2d 681]; *Tomei* v. *Henning, supra,* 67 Cal.2d 319, 323; *Gotcher* v. *Metcalf, supra,* 6 Cal.App.3d 96, 105, Stone, P. J., concurring; and *Springer* v. *Reimers, supra,* 4 Cal.App.3d 325, 334-335.)

In *Tomei* v. *Henning, supra,* the refusal of the instruction was found prejudicial. In answer to the contention that the instruction would have been redundant because the jury must have rejected the only negligence of defendant suggested by the evidence, the court noted: "Suturing the ureter was an accident, and the question was whether the exercise of reasonable care would have prevented it. Properly instructed, the jury could pursue the answer to that question along two distinct routes. It could

---

[9]The instructions of the court do not follow the law as extant at the time of trial, or currently, March 4, 1972, and include some phraseology changed by amendment, but these variances do not affect the substance of what was read to the jury.

ask what did defendant do or fail to do that might have caused the accident. Under a res ipsa loquitur instruction it could ask whether it is more likely than not that when such an accident occurs, the surgeon was negligent. Since the verdict was reached without the benefit of a res ipsa instruction, it establishes only that the jury could not find negligence along the first route; it could not identify any specific negligent conduct. Had the instruction been given, however, the jury might reasonably have concluded that regardless of how the accident happened or how it could have been avoided, its happening alone supported an inference of negligence." (67 Cal.2d at pp. 323-324. See also *Jiminez* v. *Sears, Roebuck & Co., supra,* 4 Cal.3d 379, 385; and *Springer* v. *Reimers, supra,* 4 Cal.App.3d 325, 335.)

An attempt to apply the foregoing principles to this case runs headlong into the circumstances that in this case the defendant driver has already met a heavier burden than that imposed by the proposed instruction. The instruction would have required the defendant to meet or balance the inference of negligence. (See fn. 7 above. Cf. Evid. Code, § 646 and § § 601, 603 and 604.) The accident occurred on the plaintiffs' side of the road. The instructions given by the court told the jurors that the defendant driver was negligent as a matter of law unless the defendants could satisfy the burden of proving by a preponderance of the evidence justification for being on that side of the road. (See Evid. Code, § 669 and § § 601, 605 and 606. Note *Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 624 [327 P.2d 897]; *Scott* v. *Mackey* (1958) 159 Cal.App.2d 690, 696-698 [324 P.2d 703]; and *Roberts* v. *Salmon* (1944) 66 Cal.App.2d 22, 26 [15 P.2d 556].) The jurors of necessity accepted the defendants' version of the occurrence in the face of this burden. It must be presumed that they would have accepted it in the face of a lesser standard of proof. Neither in argument to the jury nor to this court has it been suggested that the defendant driver may have been negligent in some manner not encompassed by her violation of a rule of the road.

The case is governed by *Switzer* v. *State of California, supra,* wherein the court stated: "Article VI, section 13 of the California Constitution provides: 'No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'

"The jury returned a verdict in favor of all remaining defendants; that

is to say, the tow truck driver, his employer and the State of California. The jury was instructed that it was the statutory duty of the tow truck driver to place warning signs upon the truck and the highway, and the jury was instructed that if there was a failure to do so on the part of the driver of the tow truck a presumption would arise that the violator was negligent. In returning the verdict, therefore, the jury must have believed either that the tow truck driver, Wilkins, did comply with all of the requirements set forth in the Vehicle Code, or that if there was a failure to do so this negligence did not contribute to cause the accident, or that in any event the decedent was guilty of contributory negligence as pleaded by the defendants." (269 Cal.App.2d at p. 637. See also *Alarid* v. *Vanier, supra,* 50 Cal.2d 617, 625; *Gotcher* v. *Metcalf, supra,* 6 Cal.App.3d 96, 104; and *Getas* v. *Hook, supra,* 236 Cal.App.2d 705, 719-721.)

In this case it was conceded that the plaintiffs were free of contributory negligence, and there was no question but that the presence of the defendants' car on the wrong side of the road was a contributory cause of the accident. It must be concluded that the jury found that the defendant driver had established by a preponderance of the evidence that she had done what might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the law. Under those circumstances there was no prejudicial error in refusing the rejected instruction.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 7, 1973.